307 P.3d 1142

STATE of Hawai'i, Petitioner/Plaintiff–Appellee,

v.

Pamela L. TAYLOR, Respondent/Defendant–Appellant.

No. SCWC–30161.

Supreme Court of Hawai'i.

Aug. 2, 2013.

As Amended Aug. 19, 2013.

Kimberly Tsumoto, Honolulu, Guidry for petitioner.

Phyllis J. Hironaka for respondent.

RECKTENWALD, C.J., NAKAYAMA and McKENNA, JJ., and Circuit Judge GARIBALDI, assigned by Reason of Vacancy; with ACOBA, J., concurring and dissenting separately.

Opinion of the Court by McKENNA, J.

## I. Introduction

■ The State asks us in this appeal to overrule the plurality opinion in *State v. Stenger*, 122 Hawai'i 271, 226 P.3d 441 (2010). Despite the apparent confusion regarding its actual holding, *Stenger* does not stand for the proposition for which it is sometimes cited; therefore, we decline to overrule *Stenger*. "[A]court should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require it." *Johnston v. KFC Nat'l Mgmt. Co.*, 71 Haw. 229, 233, 788 P.2d 159, 161 (1990) (internal quotations and citations omitted). Due to the confusion, however, we do take the opportunity to clarify *Stenger*'s holding.

Since *Stenger*'s publication, our appellate courts have interpreted the case inconsistently. A dissent to one of our dispositions notes that *Stenger* held that a trial court has a duty to sua sponte give a jury instruction on a defense that the defendant has not asked for, where there is some evidence supporting the defense, no matter how weak, inconclusive, or unsatisfactory the evidence may be. *See, e.g., State v. Pang*, No. 29003, 2010 WL

3496236 (Haw. Aug. 30, 2010) (dissent to order rejecting application for writ of certiorari) at 1. Many of the Intermediate Court of Appeals' ("ICA") dispositions note that *Stenger* held that the trial court has a limited duty to sua sponte instruct the jury on a particular defense only if (1) it appears that the defendant is relying on such a defense, or (2) if there is substantial evidence supportive of such a defense, and the defense is not inconsistent with the defendant's theory of the case, citing the alternative standard that Chief Justice Moon suggested in dissent. *Stenger*, 122 Hawai'i at 299, 226 P.3d at 469 (Moon, C.J., dissenting). *See, e.g., State v. Yue*, No. 29141, 124 Hawai'i 196, 2010 WL 3705983 (App. Sept. 23, 2010)(SDO) at 7; *State v. Metcalfe*, No. 30518, 2012 WL 1071503 (App. Mar. 30, 2012)(mem.) at 15; *State v. Mabson*, No. 29386, 125 Hawai'i 350, 2011 WL 4496532 (App. Sept. 28, 2011)(SDO) at 3. Even though unpublished dispositions of the appellate courts are "not precedent," they may nonetheless be "cited for persuasive value." Hawai'i Rules of Appellate Procedure Rule 35(c)(2)(2010). Hence, the need for clarity is apparent.

■ In the process of clarifying *Stenger*, we also reexamine our holding in *State v. Nichols*, 111 Hawai'i 327, 141 P.3d 974 (2006). It is this court's duty to revisit our legal rules from time to time, as circumstances demand:

> Blind adherence to legal rules constitutes an abrogation of the judicial function. Such blind adherence may result as much from adoption of a rule without adequate analysis as from application of a precedent without examination of its claim to validity. Legal rules should result from, rather than be a substitute for, legal analysis. Judicial rumination of ideas in a multitude of factual circumstances gives birth to rules. And continued rumination insures that such rules will be applied only as long as they serve the function for which they were designed.

*Columbia Casualty Co. v. Hoohuli*, 50 Haw. 212, 217, 437 P.2d 99, 104 (1968). On the issue of how appellate courts are to review the impact of an unrequested mistake of fact

jury instruction, denominated as error for the first time on appeal, we clarify and hold that such error is to be reviewed first for plain error. In the case of an unrequested mistake of fact jury instruction, plain error exists if the defendant, at trial, had met his or her initial burden to adduce credible evidence of facts constituting the defense (unless those facts are supplied by the prosecution's witnesses). *See Stenger*, 122 Hawai'i at 280, 226 P.3d at 450 (citing *State v. Locquiao*, 100 Hawai'i 195, 206, 58 P.3d 1242, 1253 (2002) and the Commentary to Hawai'i Revised Statutes ("HRS") § 701–115 (1993)). If the omission of the unrequested mistake of fact jury instruction constitutes plain error, it shall be a basis for reversal of the defendant's conviction only if an examination of the record as a whole reveals that the error was not harmless beyond a reasonable doubt.

## II. Background

### A. The Trial[1]

Respondent/Defendant–Appellant Pamela Taylor was charged by Felony Information and Non–Felony Complaint with Theft in the Second Degree, in violation of HRS §§ 708–830(2) (1993)[2] and 708–831(1)(b) (1993)[3] (Count I); and Unauthorized Practice of Law, in violation of HRS §§ 605–14[4] and –17 (1993 & Supp.2007)[5] (Count II). The charges stemmed from a period of time in February 2007 in which Taylor allegedly offered to provide legal services to Mariko Bereday, and subsequently obtained or ex- erted control over a retainer check for $7,000.00 by deception.

Taylor defended against these allegations by asserting that she herself was a victim of deception. She testified she believed she was offering legal services to Bereday on behalf of Ismael Serna Lara[6] and Damon Roth, two individuals she assumed were lawyers working for a firm called Legal Associate Services, Inc., LLC.

The complaining witness, Mariko Bereday, testified to the events leading up to Taylor's prosecution as follows. Bereday's friend had referred Taylor to her as an attorney. When Taylor went to Bereday's home for their first meeting, Taylor stated she was previously a federal public defender but was currently an attorney working at a 35–person law firm.

Taylor went to Bereday's home again with a retainer agreement, which Bereday did not sign, and asked for a $30,000 retainer. Because Bereday could only afford $7,000, she wrote out a check in that amount, with the payee line blank at Taylor's direction. The very next day, Taylor called her from the bank where Taylor was attempting to cash the check. Bereday asked Taylor why the check had to be cashed, and Taylor stated that her boss wanted to make sure Bereday's money was good.

That morning, $7,000.00 was drawn on Bereday's account. Bereday later became suspicious and asked the bank to see the

---

1. The Honorable Dexter D. Del Rosario presided.

2. At the time of the alleged offense, as it does now, HRS § 708–830(2) provided that "[a] person commits theft if the person ... obtains, or exerts control over, the property of another by deception with intent to deprive the other of the property."

3. At the time of the alleged offense, as it does now, HRS § 708–831(1)(b) provided that "[a] person commits the offense of theft in the second degree if the person commits theft ... [o]f property or services the value of which exceeds $300[.]"

4. At the time of the alleged offense, as it does now, HRS § 605–14 provided:

 Unauthorized practice of law prohibited. It shall be unlawful for any person, firm, association, or corporation to engage in or attempt to engage in or to offer to engage in the practice of law, or to do or attempt to do or offer to do any act constituting the practice of law, except and to the extent that the person, firm, or association is licensed or authorized so to do by an appropriate court, agency, or office or by a statute of the State or of the United States. Nothing in sections 605–14 to 605–17 contained shall be construed to prohibit the preparation or use by any party to a transaction of any legal or business form or document used in the transaction.

5. At the time of the alleged offense, as it does now, HRS § 605–17 provided that a violation of HRS § 605–14 is a misdemeanor. Taylor was acquitted on the Unauthorized Practice of Law count.

6. Serna Lara was named as a co-defendant in the information and complaint but could not be located for trial.

copy of the check. Bereday was surprised to see Serna Lara's name on the payee line, having never dealt with him.

After learning that there was no such law firm as Legal Associate Services, Inc., LLC and that Taylor was not an attorney, Bereday confronted Taylor and demanded her money back. Taylor returned to Bereday's home with a Capitol One check for $7,000.00 with Taylor's "law number" written on it. The check turned out to be a "bogus" check not connected to any checking account. Bereday never got her money back.

Other witnesses for the State testified consistently with Bereday's testimony. Julie Tablit, a customer service manager at the Kapolei Branch of Central Pacific Bank ("CPB"), testified that Taylor took the lead in attempting to cash Bereday's $7,000.00 check. Tablit testified that a male and a female (whom she later positively identified through photographic line-ups as Serna Lara and Taylor, respectively) presented a questionable check to one of the bank tellers. The teller called Tablit over because the check amount was over her cashing limit, and Tablit spoke with Taylor, who stated that the check was for "payment or service that was rendered to Ms. Bereday." Tablit attempted to speak with Serna Lara, but Taylor informed her that he did not speak English. According to Tablit, Serna Lara did not do anything or say anything during the five minutes that Tablit and Taylor spoke. That day, Tablit also confirmed Serna Lara's identity through his Hawai'i drivers license. Serna Lara also inked his thumbprint upon the check, per bank procedures. Tablit could not reach Bereday by phone, so she refused to cash the check and directed Taylor and Serna Lara to the Kahala Times Supermarket in-store branch of CPB, Bereday's home branch, for further action.

Stephanie Hirayama, the manager of that branch, testified that a male and a female (whom she did not rule out in a later photographic lineup as Serna Lara and Taylor), came in to cash the $7,000.00 check. Even though Serna Lara was the payee, Taylor did all the talking. Hirayama testified that Bereday, by phone, authorized her to cash the check, and that Taylor was the one who took the $7,000.00 cash off the counter.

Glenn Taniguchi, an accountant and attorney who had a longstanding professional relationship with Bereday, testified that he also discovered Taylor was not listed in the bar directory. When he confronted Taylor with that fact, Taylor told him she was listed under her maiden name, Pamela Merch. Taniguchi confirmed that a "Pamela Merch" was an inactive attorney. Unable to reach Merch under the Maryland telephone number in the bar directory, Taniguchi abandoned his efforts to confirm Taylor's credentials. Taniguchi later demanded that Taylor return the $7,000.00 in the form of a cashier's check or cash to Bereday by a date certain, which Taylor agreed to do but did not do. Instead, Bereday received the bogus $7,000.00 check from Taylor.

Although the State provided no evidence concerning Roth, the State did provide evidence that there was no such business entity by the name of Legal Associate Services, Inc., LLC, and that Serna Lara was not an attorney.

Testimony regarding Serna Lara came from David Wong, the owner-operator of the former Mountain View Dairy in Wai'anae. He testified that Serna Lara had been a full-time cow-milker for about ten years at the time of the alleged theft. Wong testified that Serna Lara lived in the employee housing complex on-site. Wong stated that he had seen Taylor at Serna Lara's home before. Wong testified that Serna Lara was not a licensed attorney, did not work for a law firm, did not run a law office out of his employee housing, and never mentioned anything about working at a law firm. Put plainly, Serna Lara was "[j]ust a milker."

Taylor testified in her own defense. She testified that she graduated from the David A. Clarke School of Law in Washington, D.C. in 1998, moved to Hawai'i in 2000, but never took the Hawai'i bar exam. Taylor never disputed that she was not licensed to practice law in Hawai'i. Taylor denied telling Bereday or Taniguchi she was an attorney.

Taylor testified generally that she took direction from Serna Lara and Roth. Taylor

testified that Bereday spoke by phone with Roth multiple times and directed that her $7,000.00 check be turned over to Roth. Unable to reach Roth, Taylor instead turned the check over to Serna Lara and later met up with him at the Kapolei CPB branch. After Tablit refused to cash the check, Taylor and Serna Lara went to the Kahala CPB branch, where Hirayama cashed the check and handed the money to Serna Lara. Taylor testified that she never touched the money and did not know what happened to the $7,000.00 in cash.

Taylor testified that Serna Lara instructed her to visit Bereday's home again to deliver a receipt for the check and other paperwork. After Bereday demanded a refund of the $7,000.00, Serna Lara became "infuriated," wrote out a refund check, and directed Taylor to deliver the check to Bereday, which Taylor did.

Taylor testified that she believed Serna Lara and Roth were attorneys because she met them through a mutual attorney friend, Pamela Merch. She said she believed Roth was an attorney because he did not agree to meet with Taylor until Merch was on-island to make the formal introduction at Roth's Queen Street office. She allegedly believed Serna Lara was an attorney because when she met him, he was "professional-looking" and "average articulate" in his use of English. Taylor testified that she filled out a job application, was hired by Roth and Serna Lara in 2006, did clerical work for both, and was paid by check per assignment.

She testified that she had visited Serna Lara at the dairy farm, and he explained that "he was an overseer of a set of the farmers," a job he held in addition to his work as an attorney at the law firm. On cross-examination, the State pointed out photographic evidence that Serna Lara was not dressed professionally (i.e., he was dressed in a shirt and shorts) when he and Taylor attempted to cash the check on a regular business day in the middle of the day. Taylor testified that she did not find his manner of dress curious.

She testified that she did not know Roth and Serna Lara were not attorneys with a legitimate law firm. Taylor testified that she understood the process of becoming a licensed attorney but never confirmed whether Serna Lara or Roth were licensed to practice law in Hawai'i.

The defense did not submit any jury instructions. All of the court's jury instructions were given by agreement. There was no instruction on mistake of fact.

The jury found Taylor guilty of theft in the second degree but acquitted her of unauthorized practice of law. The trial court issued its Judgment of Conviction and Sentence, sentencing Taylor to five years of incarceration and restitution of $7,000.00 to Bereday. Taylor timely appealed.

## B. The Appeal

For the first time on appeal, Taylor argued, "The trial court reversibly erred in *sua sponte* failing to instruct the jury on the mistake-of-fact defense as to Theft2–Deception." Specifically, Taylor argued that she was operating under the mistaken belief that she

was acting on behalf of attorneys Serna Lara and Roth. . . . Since Taylor was mistaken as to the facts that Roth and Serna Lara (1) were not attorneys, (2) were not members of a 35–person law firm, and (3) were ineligible to practice law, she was entitled to a "mistake of fact" instruction. In other words, Taylor did not commit Theft2 by deception because she did not accept Bereday's check, knowing that Roth and Serna Lara intended to take the money without rendering legal services to Bereday.

Taylor further cited to *Stenger*, 122 Hawai'i 271, 226 P.3d 441, which was decided after she was convicted, for the proposition that, where some evidence was adduced that the defendant was laboring under a mistake of fact that could negate the state of mind necessary to commit theft, the trial court was required to sua sponte instruct the jury on the mistake of fact defense, and the court's failure to so instruct the jury was not harmless beyond a reasonable doubt. Taylor concluded by requesting that the ICA vacate her Theft2–Deception conviction and remand the case for a new trial, with an order that the

court instruct the jury on the mistake of fact defense.

The State's Answering Brief focused on *Stenger*. The State argued that *Stenger* was wrongly decided, for reasons set forth in the *Stenger* dissent, authored by Justice Nakayama and joined by Chief Justice Moon. Those reasons were that requiring a sua sponte mistake of fact jury instruction (1) requires the trial court to advocate for the criminal defendant by identifying, and therefore highlighting, all possible defenses to the jury; (2) implicitly requires that the State (in order to stave off automatic retrial) request an instruction on potentially all defenses that are supported by any piece of weak evidence in the record; and (3) incentivizes defense counsel not to request a mistake-of-fact instruction in order to "receive an automatic retrial" when the issue is raised on appeal. In conclusion, the State requested that the ICA affirm Taylor's conviction.

The ICA held, "Based on [*Stenger*], we conclude that the Circuit Court erred in failing to instruct the jury on Taylor's mistake-of-fact defense and that such error was not harmless beyond a reasonable doubt." *State v. Taylor*, No. 30161 (App. Feb. 29, 2010)(SDO) at 2. The ICA therefore vacated the trial court's judgment of conviction and sentence and remanded the case for a new trial on the charge of second-degree theft by deception. *See id.*

The State now renews its request that this court overrule *Stenger*.

## III. Discussion

### A. The Mistake of Fact Defense

Taylor was charged with Theft in the Second Degree, by Deception, in violation of HRS § 708–830(2), which states, "A person commits theft if the person ... obtains, or exerts control over, the property of another by deception with intent to deprive the other of the property," and in violation of HRS § 708–831(1)(b), the value of the property or services having exceeded $300. "Deception" is further defined, in relevant part, in HRS § 708–800 (1993) as knowingly "[c]reat[ing] or confirm[ing] another's impression which is false and which the defendant does not be-

lieve to be true," "[f]ail[ing] to correct a false impression which the person previously has created or confirmed," or "[p]romis[ing] performance which the person does not intend to perform or knows will not be performed...."

Mistake of fact can be a defense to Theft in the Second Degree. This defense is provided by statute:

> **Ignorance or mistake as a defense.** In any prosecution for an offense, it is a defense that the accused engaged in the prohibited conduct under ignorance or mistake of fact if:
>
> (1) The ignorance or mistake <u>negatives the state of mind required to establish an element of the offense;</u> or
>
> (2) The law defining the offense or a law related thereto provides that the state of mind established by such ignorance or mistake constitutes a defense.

HRS § 702–218 (1993) (emphasis added).

### B. *State v. Stenger*

Our most recent case expounding on mistake of fact instructional error is *Stenger*, 122 Hawai'i 271, 226 P.3d 441. In that case, Petitioner/Defendant–Appellant Angela Stenger was charged and convicted of Theft in the First Degree for allegedly taking $23,034 in welfare benefit overpayments. 122 Hawai'i at 276, 226 P.3d at 446. The State alleged that Stenger obtained the overpayments by deceiving the Department of Human Services ("DHS") when she failed to report that her children were not living with her and failed to report her income from substitute teaching, from her surf school, and via inheritance. 122 Hawai'i at 275–76, 226 P.3d at 445–46. At trial, Stenger requested a claim of right instruction on the basis that Stenger "believed she was entitled to the benefits that she obtained and exerted control over[.]" 122 Hawai'i at 276, 226 P.3d at 446. The trial court denied the request. *Id.*

Stenger appealed her conviction to the ICA, arguing that the trial court erred by refusing to give the requested claim of right instruction and "fail[ed] sua sponte to give a mistake-of-fact instruction[.]" *Id.* In other words, Stenger raised the lack of an explicit mistake of fact instruction for the first time

before the ICA. The ICA vacated the trial court's judgment of conviction and remanded Stenger's case for a new trial. 122 Hawai'i at 277, 226 P.3d at 447. It held that the trial court erred in denying Stenger's requested claim of right instruction. 122 Hawai'i at 276–77, 226 P.3d at 446–47. It also held that Stenger was not entitled to a mistake of fact instruction because her claimed mistake concerned what she was required to report, which the ICA considered to be a mistake of law and no defense. 122 Hawai'i at 277, 226 P.3d at 447.

On certiorari, Stenger pressed the mistake of fact issue, arguing that the ICA gravely erred in concluding she was not entitled to the instruction. *Id.* Stenger acknowledged that she did not request an explicit mistake of fact instruction at trial, but she argued that the evidence adduced at trial supported the instruction, and that the trial court's failure to give the instruction was not harmless beyond a reasonable doubt. *Id.* Stenger argued that she labored under the following mistake of fact: "if she believed she was complying with the reporting requirements by virtue of the items she did report to DHS, then she could not have 'knowingly' created or failed to correct a false impression." 122 Hawai'i at 280, 226 P.3d at 450.

A plurality of this court agreed with Stenger. The plurality concluded that the trial court's "failure to instruct on the defense of mistake of fact" was not harmless beyond a reasonable doubt because there was a "reasonable possibility that the jury, if provided with a separate mistake of fact instruction, could have found that [Stenger] believed she complied with the reporting requirements and, thus, did not knowingly deceive DHS." 122 Hawai'i at 282–83, 226 P.3d at 452–53 (following the analytical framework set forth in *Nichols*, 111 Hawai'i 327, 141 P.3d at 974).

In reaching this conclusion, the *Stenger* plurality first favorably cited *Locquiao*, 100 Hawai'i at 206, 58 P.3d at 1253 and the commentary to HRS § 701–115 for the following proposition:

> With respect to defenses that negate penal liability, the defendant has the initial burden to adduce 'credible evidence of facts constituting the defenses, unless those

facts are supplied by the prosecution's witnesses.'

122 Hawai'i at 280, 226 P.3d at 450.

The plurality noted that *Locquiao* held that "where a defendant has adduced evidence at trial supporting an instruction on the statutory defense of ignorance or mistake of fact, the trial court must, <u>at the defendant's request</u>, separately instruct as to the defense, notwithstanding that the trial court has also instructed regarding the state of mind requisite to the charged offense." 122 Hawai'i at 281, 226 P.3d at 451 (citing *Locquiao*, 100 Hawai'i at 208, 58 P.3d at 1255) (emphasis added). This is so, "no matter how weak, inconclusive, or unsatisfactory the evidence [as to the defendant's mistake of fact] may be." 122 Hawai'i at 281, 226 P.3d at 451. *See also State v. Stocker*, 90 Hawai'i 85, 94 n. 10, 976 P.2d 399, 408 n. 10 (1999) ("To meet his [or her] initial burden of production [on a non-affirmative defense, including mistake of fact], the defendant need only come forward with ' "some" evidence, "no matter how weak, inconclusive, or unsatisfactory the evidence may be." ' ")

It was no accident that the plurality turned to *Locquiao*, a case involving a mistake of fact instruction <u>requested</u> by the defendant at trial but denied by the trial court. Stenger argued that she "did request a claim of right instruction, which is a subspecies of mistake of fact, and, therefore, ... that request should be construed liberally to encompass a request for mistake of fact." 122 Hawai'i at 281 n. 13, 226 P.3d at 451 n. 13. The *Stenger* plurality construed Stenger's mistake of fact instruction to have been "requested" by the defendant at trial as "encompass[ed]" in her request for a claim of right instruction. 122 Hawai'i at 284, 226 P.3d at 454.

The plurality explained that the claim of right defense is a "particular type of mistake of fact that would be logically encompassed under a general mistake of fact instruction." *Id.* Specifically, a claim of right instruction would be appropriate where the defendant asserts "(1) some form of pre-existing ownership or possession of (2) specific property." 122 Hawai'i at 285, 226 P.3d at 455. Based

on the evidence presented, the *Stenger* plurality concluded that it was a mistake of fact defense Stenger asserted at trial, not a claim of right defense. *Id.*

As Judge Kim emphasized in his concurrence, "I would contend that ... the defense in the instant case did essentially <u>request</u> a jury instruction on the mistake of fact defense when it <u>mistakenly requested</u> one on claim of right.... In effect, the defense had the theory right, but the specific instruction wrong, and the trial court, while correctly recognizing the latter, mistakenly failed to recognize the former[.]" 122 Hawai'i at 296, 226 P.3d at 466 (Kim, J., concurring) (emphasis added). One of the dissents recognized that, had Stenger explicitly <u>requested</u> the mistake of fact jury instruction, under *Locquiao*, the trial court would have been required to so instruct. 122 Hawai'i at 300 n. 1, 226 P.3d at 470 n. 1 (Nakayama, J., dissenting)

The *Stenger* plurality could have expressly stated that a trial court has a duty to correct an erroneous request for a jury instruction where the theory of the defense clearly implicates another jury instruction. *See State v. Faria*, 100 Hawai'i 383, 390, 60 P.3d 333, 340 (2002) ("[F]aced with inaccurate or incomplete instructions, the trial court has a duty to, with the aid of counsel, either correct the defective instructions or to otherwise incorporate it into its own instructions."); *State v. Vanstory*, 91 Hawai'i 33, 42, 979 P.2d 1059, 1068 (1999) ("If the instructions requested by the parties are inaccurate or incomplete but are necessary 'in order for the jury to "have a clear and correct understanding of what it is that they are to decide[,]" ' then the trial court has the duty either to correct any defects or to fashion its own instructions.") (citing *State v. Okumura*, 78 Hawai'i 383, 411, 894 P.2d 80, 108 (1995)); *State v. Sawyer*, 88 Hawai'i 325, 330, 966 P.2d 637, 642 (1998) (same).

Upon review, then, *Stenger* actually determined that (1) a trial court has a duty to properly instruct the jury on mistake of fact in the face of a requested but erroneous jury instruction on claim of right; and (2) the mistake of fact jury instruction was further required to be given because the defendant "requested" it and raised some evidence in support of the defense. Read this way, *Stenger* did not actually disrupt our instructional error precedent to the extent feared by the dissent in that case. *See* 122 Hawai'i at 306, 226 P.3d at 476 (Nakayama, J., dissenting) (interpreting *Stenger* to require a trial court to "instruct the jury sua sponte as to all defense instructions that may possibly be implicated by the facts"). Read this way, it also would not have been necessary for Chief Justice Moon to propose an alternative test, which has since been inconsistently adopted by the ICA in appeals raising instructional error. *See* 122 Hawai'i at 298, 299, 226 P.3d at 468, 469 (Moon, C.J., dissenting) ("[T]he trial court has a limited duty to sua sponte instruct the jury on a particular defense if (1) it appears that the defendant is relying on such a defense, or (2) if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case.") (citing *People v. Barton*, 12 Cal.4th 186, 47 Cal.Rptr.2d 569, 906 P.2d 531, 535 (1995)). Rather, as to <u>requested</u> jury instructions, *Stenger* reaffirmed the trial court's duty to correct erroneously requested jury instructions, and reaffirmed that a defendant is entitled to a requested jury instruction on a defense when he presents some evidence going to the defense.

### C. *State v. Nichols*

Thus, *Stenger* does not stand for the proposition that it has become cited for: that a trial court errs in failing to sua sponte give a jury instruction <u>unrequested</u> by the defendant at trial; *Nichols*, however, does. 111 Hawai'i 327, 141 P.3d 974. Thus, *Nichols* is actually dispositive of Taylor's appeal, and we take the opportunity to revisit that case. In *Nichols*, the defendant ("Nichols") was charged with and convicted of Terroristic Threatening in the First Degree in violation of HRS § 707–716(1)(c) (1993). 111 Hawai'i at 328–29, 141 P.3d at 975–76.

On certiorari, Nichols argued, inter alia, that the trial court erred in not instructing the jury that they could compare the "relevant attributes" between him and the complaining witness (a police officer) to de-

termine whether the complaining witness objectively, reasonably felt threatened. 111 Hawai'i at 329, 141 P.3d at 976. As with *Taylor*, the error in *Nichols* was raised for the first time on appeal, as Nichols had not requested the instruction at trial, and no such instruction was given to the jury. 111 Hawai'i at 333, 339 n. 7, 141 P.3d at 980, 986 n. 7.

In reversing Nichols' conviction, this court held

> [A]lthough as a general matter forfeited assignments of error are to be reviewed under the [Hawai'i Rules of Penal Procedure ("HRPP")] Rule 52(b) [7] plain error standard of review, in the case of erroneous jury instructions, that standard of review is effectively merged with the HRPP Rule 52(a) [8] harmless error standard of review because it is the duty of the trial court to properly instruct the jury. As a result, once instructional error is demonstrated, we will vacate, without regard to whether timely objection was made, if there is a reasonable possibility that the error contributed to the defendant's conviction, i.e., that the erroneous jury instruction was not harmless beyond a reasonable doubt.

111 Hawai'i at 337, 141 P.3d at 984. We stated the new "merger" rule "flow[ed] from this court's holding in *Haanio* [9] that the duty to instruct the jury ultimately lies with the trial court[.]" 111 Hawai'i at 335–36, 141 P.3d at 982–83 (footnote omitted).

**7.** Under HRPP Rule 52(b) (1977), "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

**8.** Under HRPP Rule 52(a) (1977), "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

**9.** Upon further review, however, *State v. Haanio*, 94 Hawai'i 405, 16 P.3d 246 (2001), did not necessarily compel the holding in *Nichols*, which *Stenger* adopted. *Stenger*, 122 Hawai'i at 281, 226 P.3d at 451. *Haanio* held "that trial courts must instruct juries as to any included offenses when 'there is a rational basis in the evidence for a verdict acquitting the defendant of the offense charged and convicting the defendant of the included offense[.]'" *Haanio*, 94 Hawai'i at 413, 16 P.3d at 254. This is so "despite any objection by the defense, and even in the absence of a

We reiterate that it is the trial court's duty to properly instruct the jury. However, in the case of a jury instruction that is not requested at trial, the omission of which is later denominated as error for the first time on appeal, the *Nichols'* "merger" holding should also be clarified.

Upon further examination of this case, it appears that the *Nichols* court, despite its "merger" holding, continued to engage in a two-step, plain-error-then-harmless error review in analyzing instructional error. *Nichols* observed that the defendant must first overcome the presumption that the instructions as given were correct. 111 Hawai'i at 337 n. 6, 141 P.3d at 984 n. 6. Once instructional error is demonstrated, the defendant must then show that there was a reasonable possibility that the erroneous jury instruction contributed to his or her conviction, i.e., that the instructional error was not harmless beyond a reasonable doubt. *See* 111 Hawai'i at 337, 141 P.3d at 984.

The first step in the *Nichols* analysis was our determination that "the circuit court's failure to give a 'relevant attributes' instruction was *plain error*[.]" 111 Hawai'i at 338, 141 P.3d at 985 (emphasis added). This was so because under *State v. Valdivia*, the failure to instruct on relevant attributes in a terroristic threatening case is reversible error in any event, whether or not the relevant attributes instruction is requested (as it was in *Valdivia*) or unrequested (as it was in

request from the prosecution." *Id.* In other words, "trial courts are duty bound to instruct juries 'sua sponte ... regarding lesser included offenses' ... having a rational basis in the evidence." 94 Hawai'i at 415, 16 P.3d at 256 (citation omitted).

There is a clear difference between requiring sua sponte jury instructions on lesser included offenses versus defenses, in terms of the burden upon the trial court, and in terms of the effect upon trial strategy. *See, e.g., State v. Auld,* 114 Hawai'i 135, 148, 149, 157 P.3d 574, 587, 588 (App.2007) ("A rule requiring the court to give a self-defense instruction even if deliberately not requested by the defense would put the trial court in a difficult position ... Permitting a defendant to exercise a measure of strategic control over whether the jury is instructed on self-defense ... would simply allow the defendant to focus the jury's attention....") (Nakamura, J., concurring and dissenting).

*Nichols* ). 95 Hawai'i 465, 479, 24 P.3d 661, 675 (2001) (concluding that the omission of an instruction on relevant attributes was error because "the jury ... should have been instructed that it could consider relevant attributes of both the defendant and the [complaining witness] in determining whether the [complaining witness's] fear of bodily injury ... was objectively reasonable under the circumstances....")

The next step in the *Nichols* analysis was our determination that "there is a reasonable possibility that the error contributed to Nichols' conviction, *i.e.,* the error was not harmless beyond a reasonable doubt." 111 Hawai'i at 338, 141 P.3d at 985 (emphasis added). Thus, it would appear that, rather than "merging" the two standards of review, the *Nichols* court retained the two-step plain-error-then-harmless-error inquiry.

■ Thus, in the case of a mistake of fact jury instruction that is not requested and not given at trial, the omission of which is denominated as error for the first time on appeal, we clarify that the plain error standard continues to apply. Plain error exists "[i]f the substantial rights of the defendant have been affected adversely[.]" *State v. Kikuta,* 125 Hawai'i 78, 95, 253 P.3d 639, 656 (2011). This court "will apply the plain error standard of review to correct errors [that] seriously affect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights." *Id.* (citations omitted).

■ In the case of a jury instruction on mistake of fact that is not requested by the defense and not given by the trial court, plain error affecting substantial rights exists if the defendant had met his or her initial burden at trial of adducing credible [10] evidence of facts constituting the defense (or those facts are supplied by the prosecution's witnesses). *See Stenger,* 122 Hawai'i at 280, 226 P.3d at 450 (citing *Locquiao,* 100 Hawai'i at 206, 58 P.3d at 1253 and the Commentary to HRS § 701–115). *See id.*

We draw our holding from HRS § 701–115(2) and its Commentary. HRS § 701–115 (1993) provides:

**Defenses.** (1) A defense is a fact or set of facts which negatives penal liability.

(2) No defense may be considered by the trier of fact unless evidence of the specified fact or facts has been presented. If such evidence is presented, then:

(a) If the defense is not an affirmative defense, the defendant is entitled to an acquittal if the trier of fact finds that the evidence, when considered in the light of any contrary prosecution evidence, raises a reasonable doubt as to the defendant's guilt; or

(b) If the defense is an affirmative defense, the defendant is entitled to an acquittal if the trier of fact finds that the evidence, when considered in light of any contrary prosecution evidence, proves by a preponderance of the evidence the specified fact or facts which negative penal liability.

(3) A defense is an affirmative defense if:

---

**10.** By "credible" evidence we mean evidence "offering reasonable grounds for being believed." *Webster's Ninth New Collegiate Dictionary* 305 (1988). The Dissent defines "credible" to mean "not incredible, that is, not 'too extraordinary and improbable to be believed[.]'" Dissent at n.11 (citing *Merriam Webster's Collegiate Dictionary* 590 (10th ed. 1993)). Respectfully, we have already opined that evidence that is "not credible," as Taylor's was, could merely be "plausible (and, therefore, not incredible)," just "not entirely believable." *State v. Maelega,* 80 Hawai'i 172, 178 n. 9, 907 P.2d 758, 764 n. 9 (1995).

We are aware that "credibility" is usually associated with subjective believability. *See, e.g., State v. West,* 95 Hawai'i 452, 464, 24 P.3d 648, 660 (2001) ("[A]ppellate courts must objectively review all the evidence and avoid commenting on its subjective believability, especially the credibility of the witnesses.") Appellate courts are, however, sometimes required to employ credibility determinations. For example, "[w]hen an appellate court reviews the sufficiency of the evidence, it examines whether there was substantial evidence to support the conclusion of the trier of fact.... Substantial evidence as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." *State v. Gomes,* 117 Hawai'i 218, 226, 177 P.3d 928, 936 (2008) (citation omitted). Thus, in the current context, we examine whether the defendant met her initial burden to adduce evidence with reasonable grounds for being believed.

(a) It is specifically so designated by the Code or another statute; or

(b) If the Code or another statute plainly requires the defendant to prove the defense by a preponderance of the evidence.

The Commentary to HRS § 701–115 provides, in full:

The Code establishes two classes of defenses. As to both, it places an initial burden on the defendant to come forward with some credible evidence of facts constituting the defense, unless, of course, those facts are supplied by the prosecution's witnesses.

As to the burden of persuasion, two different rules are codified. In the case of defenses which are not affirmative, the defendant need only raise a reasonable doubt as to the defendant's guilt. The other side of the coin is that the prosecution must prove beyond a reasonable doubt facts negativing the defense. The prosecution in fact does this when the jury believes its case and disbelieves the defense.

In the case of affirmative defenses, the burden on the defendant increases. Now the defendant must prove by a preponderance of the evidence facts which negative the defendant's penal liability. Subsection (4) defines "affirmative defense," making it clear that this type of defense needs special legislative prescription. Unless the Legislature has made a particular defense affirmative, the defendant's burden is only to raise a reasonable doubt.[11]

Contrary to the Dissent's assertion, *Maelega*, 80 Hawai'i 172, 907 P.2d 758, did not invalidate the Commentary to HRS § 701–115. Dissent at VI.A. In that case, the de-

fendant ("Maelega"), who was tried for murder, requested a jury instruction on extreme mental and emotional disturbance ("EMED"). 80 Hawai'i at 174, 907 P.2d at 760. We observed that the requirement in *State v. Nobriga*, 10 Haw.App. 353, 359, 873 P.2d 110, 113 (1994), that the defendant come forward with credible evidence was inconsistent with this court's holding in *State v. Pinero*, 75 Haw. 282, 304, 859 P.2d 1369, 1379 (1993), that even "weak, inconclusive, or unsatisfactory" evidence supports the giving of a defense instruction. That much remains true as to requested defense instructions, which Maelega's was.

The primary issue in *Maelega*, however, was not the meaning of the Commentary but whether the circuit court's modified instruction on the defendant's requested EMED defense, which included language drawn from the Commentary, impermissibly shifted the burden of proof onto the defendant. *Maelega*, 80 Hawai'i at 176, 907 P.2d at 762. The modified instruction read as follows:

The defense of extreme mental or emotional disturbance places *the initial burden on the defendant to come forward with some credible evidence of fact constituting a defense* unless those facts are supplied by the prosecution's witnesses. *If this occurs,* the prosecution must then prove beyond a reasonable doubt that the defendant was not at the time of the offense under the influence of extreme mental or emotion [sic] disturbance for which there is a reasonable explanation.

80 Hawai'i at 176, 907 P.2d at 762 (emphasis in original).

We held that this instruction "impliedly instructed the jury that the burden under

---

**11.** The dissent states that the majority "preemptively shifts the burden of persuasion to the defendant at a point in the litigation where the defendant is only required to satisfy the burden of production." Dissent at V.B. However, the commentary actually states that the defendant must "come forward with some credible evidence of facts constituting the defense," and the phrase "come forward" clearly elaborates upon the statute's requirement that the defendant "present[ ]" "evidence of the specified fact or facts" before the trier of fact considers a defense. In other words, "credible evidence" in the Commentary refers to the defendant's burden of production, not persuasion. In fact, the next para-

graph in the Commentary states the "burden of persuasion" is identified as belonging to the State or to the defendant, depending upon whether the defense is an affirmative or nonaffirmative defense. Thus, the Commentary still provides helpful guidance as to the defendant's burden of coming forward with credible evidence to constitute a defense. Contrary to the Dissent's assertion, this interpretation of the Commentary to HRS § 701–115 is still viable. Dissent at VI.A. As recently as *Locquiao* and *Stenger,* we continued to favorably cite to the Commentary to HRS § 701–115. *See Locquiao,* 100 Hawai'i at 206, 58 P.3d at 1253; *Stenger,* 122 Hawai'i at 280, 226 P.3d at 450.

HRS § 701–115(2) was a question of fact for the jury to decide," i.e., that the jury was to decide whether Maelega came forward with some credible evidence of facts constituting the EMED defense. 80 Hawai'i at 177, 907 P.2d at 763. We held that the circuit court should not have instructed the jury on Maelega's "burden of production. . . ." *Id.* Rather, the jury should have been instructed only as to the State's ultimate burden of persuasion to negative Maelega's EMED defense beyond a reasonable doubt. *Id.*

■ We stated that it was not the jury's job to "conclude[ ] that Maelega's purported defense was not credible," because "it is not the province of the jury to second guess the judge's decision to instruct on EMED manslaughter. . . ." 80 Hawai'i at 178 n. 9, 179 n. 10, 907 P.2d at 764 n. 9, 765 n.10. Rather, we held that whether the defendant's burden of production "has been met is a question that should be decided by the trial court as a matter of law." 80 Hawai'i at 179 n. 10, 907 P.2d at 765 n. 10; *see also* 80 Hawai'i at 177 n. 8, 907 P.2d at 763 n. 8 (characterizing the trial court's determination that a defendant has met his initial burden of producing "some credible evidence of facts constituting the defense" as calling for a "legal conclusion."). In *Maelega*, we believed that the circuit court had, by giving the EMED instruction to the jury, "implicitly acknowledged that, based on the record, a reasonable juror could harbor a reasonable doubt as to whether Maelega acted while under an extreme emotional disturbance for which there was a reasonable explanation when he killed [the victim.]" 80 Hawai'i at 177, 907 P.2d at 763. Therefore, the role of the trial court in deciding to give a jury instruction on a requested non-affirmative defense is to resolve a question of law based on an objective juror standard.

■ Synthesizing and applying HRS § 701–115, its Commentary, and *Maelega* in

the context of this case, we hold that, in the case of an unrequested mistake of fact jury instruction denominated as error for the first time on appeal, HRS § 701–115(2) and its accompanying Commentary place the burden of production on the defendant to present evidence of the specified fact or facts going to the defense. In other words, the defendant must have come forward at trial with credible evidence of facts constituting the defense, unless those facts were supplied by the prosecution's witnesses. Further, "credible evidence" in this context means that the circuit court should have concluded, based on the record that existed at trial, that the evidence "offered reasonable grounds for being believed," i.e., that "a reasonable juror could harbor a reasonable doubt" as to the defendant's guilt, and should have given the unrequested mistake of fact jury instruction. Failure to give the mistake of fact jury instruction under these circumstances constitutes plain error.[12]

This is so, because a defense like mistake of fact is capable of "negativ[ing] the state of mind required to establish an element of the offense," thus capable of avoiding conviction. HRS § 702–218 (1993); *see also* HRS § 701–114(1)(b) (1993) ("[N]o person may be convicted of an offense unless the following are proved beyond a reasonable doubt: . . . The state of mind required to establish each element of the offense[.]").

■ This court may notice as plain error the omission of a mistake of fact jury instruction if it appears that the defendant has come forward with credible [13] evidence going to the defense that the jury should have been able to consider, as such an error "seriously affects the fairness, integrity, or public reputation of judicial proceedings," and it would "serve the ends of justice" and "prevent the denial of fundamental rights" to address such an omission. *Kikuta*, 125 Hawai'i at 95, 253

---

12. In this regard, we disagree with the Dissent that weak, inconclusive, or unsatisfactory evidence going to a particular defense is always "apparent" to the trial court in a bench or jury trial. Dissent, Section V.A. It is more likely the case that weak, inconclusive, or unsatisfactory evidence would become "apparently" relevant to a particular defense when the defendant requests the defense and the trial court's attention is drawn to such evidence in the record. Absent such a request, due to its nature, weak, inconclusive, or unsatisfactory evidence relevant to an unstated defense may not necessarily take on any apparent significance during trial.

13. *See supra* note 10.

P.3d at 656. In such an instance, where the omission of the mistake of fact jury instruction constitutes plain error, it shall be a basis for reversal of the defendant's conviction only if an examination of the record as a whole reveals that the error was not harmless beyond a reasonable doubt.

### D. Taylor's Appeal

 Turning to Taylor's appeal, the absence of a jury instruction on mistake of fact was not plain error, because Taylor had not met her initial burden of adducing credible [14] evidence of facts constituting the defense, and those facts were not supplied by the prosecution's witnesses. Taylor's testimony that she believed Roth and Serna Lara were attorneys after she met them through Pamela Merch at their Queen Street office and worked for them in a clerical capacity for a year was not credible [15], in light of the evidence, as summarized above. Therefore, the omission of the mistake of fact jury instruction at trial was not plain error. Even assuming arguendo that it was, there is no reasonable possibility that the omission of a mistake of fact instruction contributed to Taylor's conviction. In other words, the omission of the mistake of fact jury instruction was harmless beyond a reasonable doubt.

We therefore reverse the ICA's March 27, 2012 Judgment on Appeal, entered pursuant to its February 29, 2012 Summary Disposition Order, which vacated the October 7,

2009 Judgment and Conviction of the Circuit Court of the First Circuit and remanded this case for a new trial. Taylor's Judgment of Conviction and Sentence is affirmed.

Concurring and Dissenting Opinion by ACOBA, J.

I would hold, first, that if weak, inconclusive, or unsatisfactory evidence going to a particular defense is adduced (such evidence by definition being apparent from the record), the court must instruct the jury on that defense, even if the defendant does not request such an instruction, in order that the jury may arrive at an informed and just verdict.[1] Second, respectfully, the majority's holding that an instruction on a defense will not be given unless requested, except where there is "credible evidence" of such a defense and, "a reasonable juror could harbor a reasonable doubt," *inter alia,* elevates trial strategy over the public interest in arriving at an even result, shifts the law-giving function of the judge to the parties, encroaches on the jury's role, and contravenes the defendant's constitutional right to a jury trial, the right to an impartial judge, the presumption of innocence, and the right to a fair trial.[2] Third, in my view, in accordance with *State v. Nichols,* 111 Hawai'i 327, 141 P.3d 974 (2006), where the court has erred in giving jury instructions and the defendant failed to object at trial, an appellate court need not first consider whether the error is plain error, but

---

**14.** *See supra* note 10.

**15.** *See supra* note 10.

**1.** The majority concludes that there was evidence presented by Respondent/Defendant–Appellant Pamela L. Taylor (Taylor) at trial supporting a mistake of fact defense, but that such evidence was "not credible" and therefore omission of the mistake of fact jury instruction at trial was not plain error. Majority's opinion at 207–08, 307 P.3d at 1153–54. The majority further concludes that, even if, arguendo, there was plain error, the error was harmless beyond a reasonable doubt because there is no reasonable possibility that the omission of a mistake of fact instruction contributed to the conviction. *Id.* at 32.

I concur that Taylor adduced evidence in this case regarding the mistake of fact defense, however weak, but that the failure by the Circuit Court of the First Circuit to provide a mistake of

fact defense instruction under the circumstances was harmless beyond a reasonable doubt.

**2.** According to the majority's rule, an appellate court will determine (1) whether evidence of facts constituting the defense was adduced, *see* majority's opinion at 207, 307 P.3d at 1153; (2) whether the evidence adduced was "credible", *id.;* (3) whether plain error has occurred, *see* majority's opinion at 208, 307 P.3d at 1154; and (4) whether the error was not harmless beyond a reasonable doubt, majority's opinion at 207, 307 P.3d at 1153.

The majority's holding conveys to trial courts that in all cases where defense instructions are unrequested by the defendant, that before giving such an instruction the trial court must determine (1) that evidence of the particular defense has been adduced; (2) that such evidence is "credible"; and (3) that "a reasonable juror could harbor a reasonable doubt" as to the de-

<... >

instead shall proceed to harmless error review.

## I.

This court has not previously been presented with the exact circumstances of the instant case, namely where a jury instruction as to a defense is unrequested at trial. However, based on *State v. Stenger*, 122 Hawai'i 271, 226 P.3d 441 (2010), and this court's precedent with respect to the court's duty to properly instruct the jury, it logically follows that if any evidence is adduced at trial going to a particular defense that is weak, inconclusive, or unsatisfactory, the court must instruct the jury on that defense, even if the defendant does not request such an instruction.

## A.

Preliminarily, the principles underlying the holding in *Stenger* must be reviewed. The majority notes that there has been "apparent confusion" regarding the actual holding of *Stenger*. Majority's opinion at 197, 307 P.3d at 1143. This confusion has resulted from the ICA's adoption of a test from one of the two dissenting opinions in *Stenger*. *See e.g., State v. Yue*, No. 29141, 2010 WL 3705983, at *3 (App. Sept. 23, 2010) (SDO); *State v. Mabson*, No. 29386, 2011 WL 4496532, at *1 (App. Sept. 28, 2011) (SDO); *State v. Metcalfe*, No. 30518, 2012 WL 1071503, at *8 (App. Mar. 30, 2012) (mem.). The ICA's departure from the precedent of this court should not be encouraged. In each of the above unpublished dispositions, the ICA cites to the dissenting opinion in *Stenger* authored by former Chief Justice Moon.

Plainly, it is the duty of the ICA to follow precedent.[3] The ICA states that "[w]hile the multiple opinions [in *Stenger*] differ regarding the applicable standard, it is at least clear

that four of the five members of [the Hawai'i supreme] court agree that a trial court has a duty to *sua sponte* instruct the jury on a particular defense if: '(1) it appears that the defendant is relying on such a defense, or (2) if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case.' " *Yue*, 2010 WL 3705983, at *3 (citing *Stenger*, 122 Hawai'i at 298, 226 P.3d at 468 (Moon, C.J., dissenting)) (emphases added); *see also Mabson*, 2011 WL 4496532, at *1; *Metcalfe*, 2012 WL 1071503, at *8.

This was an incorrect application of *Stenger* for at least three reasons. First, the ICA did not recognize that the issue before it in *Yue*, *Mabson*, and *Metcalfe*, namely whether the court had a duty to instruct the jury on defenses that were entirely unrequested by the defendant, but for which evidence was adduced at trial, was not directly determined by the holding in *Stenger*, as discussed below. Second, the ICA misread Judge Kim's concurring opinion to reach a result different from that of the majority in *Stenger*, despite Judge Kim's statement that he joined with two other justices in the opinion of the court: "I concur with the majority in both the holdings and the analysis supporting them on all issues in this case." *Stenger*, 122 Hawai'i at 296, 226 P.3d at 466 (Kim, J., concurring) (emphasis added). Indeed, Judge Kim signed the majority opinion. The majority opinion did not address the dissents. *See id.* at 271–96, 226 P.3d at 441–66. Judge Kim wrote separately "only to comment briefly on" a point made in Justice Nakayama's dissenting opinion. *Id.* at 296, 226 P.3d at 466 (Kim, J., concurring). Third, the "substantial evidence" standard from Chief Justice Moon's dissent, *Stenger*, 122 Hawai'i at 298, 226 P.3d at 468 (Moon, C.J., dissenting), which the ICA applied, was never adopted by the majority in *Stenger*, and

---

fendant's guilt, majority's opinion at 207, 307 P.3d 1153.

**3.** In *State v. Hinton*, 120 Hawai'i 265, 204 P.3d 484 (2009), for example, this court noted that the ICA's addition of a "separation of powers" analysis into the six-factor test to determine when to dismiss an indictment with prejudice following one or more deadlocked juries, as this court set out in *State v. Moriwake*, 65 Haw. 47, 56, 647 P.2d 705, 712 (1982), "was a departure from this

court's precedent, which the ICA is bound to follow." *Hinton*, 120 Hawai'i at 277 n. 8, 204 P.3d at 497 n. 8. This court stated that "[w]hen the ICA fails to follow precedent it casts the law in disarray, creating uncertainty for trial courts, the prosecution, and the defense[,]" and that "[i]n light of the fact that Hawai'i Rules of Appellate Procedure Rule 25 (2008) now permits SDOs to be cited for persuasive value, it is especially important for the ICA to consistently follow precedent[.]" *Id.*

manifestly violates this court's precedent, as discussed later in Appendix A attached hereto.

### B.

It has long been held that it is the judge's duty to ensure that all jury instructions cogently explain the law applicable to the facts in the case before it. This court has repeatedly stated that "it is the duty of the circuit judge to see to it that the case goes to the jury in a clear and intelligent manner, so that [the jurors] may have a clear and correct understanding of what it is [the jurors] are to decide, and he [or she] shall state to them fully the law applicable to the facts." *State v. Feliciano*, 62 Haw. 637, 643, 618 P.2d 306, 310 (1980) (quoting *People v. Henry*, 395 Mich. 367, 236 N.W.2d 489, 492 (1975)). Faced with inaccurate or incomplete instructions, "[the] trial court has a duty to, with the aid of counsel, either correct the defective instruction or to otherwise incorporate it into its own instruction." *State v. Riveira*, 59 Haw. 148, 155, 577 P.2d 793, 797 (1978) (citations omitted). Thus, the ultimate responsibility properly to instruct the jury lies with the court.

### C.

*State v. Haanio*, 94 Hawai'i 405, 16 P.3d 246 (2001), reaffirmed this principle. The issue in that case was whether the court erred when it instructed the jury on a lesser-included offense against the defendant's wishes. *Id.* at 409–10, 16 P.3d at 250–51. It was explained that in *State v. Kupau*, 76 Hawai'i 387, 879 P.2d 492 (1994), an exception to the court's "ultimate responsibility and duty properly to instruct the jury[,]" (emphasis in original), had been carved out "where the prosecution ha[d] not sought included offense instructions and the defendant

4. The term "liability" is defined as "[t]he quality or state of being legally obligated or accountable; legal responsibility to another or to society, enforceable by civil remedy or criminal punishment." *Black's Law Dictionary* 977 (9th ed. 2009).

5. Pursuant to the Hawai'i Penal Code, "[t]he elements of an offense are such (1) conduct, (2) attendant circumstances, and (3) results of con-

ha[d] expressly objected, for his or her own tactical reasons, to the submission of such instructions to the jury[.]" *Haanio*, 94 Hawai'i at 414, 16 P.3d at 255. *Haanio* overruled *Kupau* and held that courts must instruct juries as to any included offenses when "there is a rational basis in the evidence for a verdict acquitting the defendant of the offense charged and convicting the defendant of the included offense[,]" despite the wishes of the defendant or defendant's counsel. *Haanio*, 94 Hawai'i at 413, 16 P.3d at 254 (emphasis added) (internal citation omitted).

*Haanio* declared that there was "no constitutional or substantial right of a defendant not to have the jury instructed on lesser included offenses." *Id.* at 414–15, 16 P.3d at 255–56. Similarly, this court could "conceive of no right of the prosecution to prevent the jury from considering included offense instructions supported by the evidence." *Id.* at 415, 16 P.3d at 256. We emphasized that, "[r]ather, in our judicial system, the trial courts, not the parties, have the duty and ultimate responsibility to insure that juries are properly instructed on issues of criminal liability.[4]" *Id.* (emphasis added) (citing *Kupau*, 76 Hawai'i at 395, 879 P.2d at 500; *State v. Nakamura*, 65 Haw. 74, 79, 648 P.2d 183, 187 (1982); *Feliciano*, 62 Haw. at 643, 618 P.2d at 310).

### D.

Subsequently, in *State v. Locquiao*, this court reaffirmed that it was the court's duty to properly instruct the jury on applicable defenses[5]:

This court has consistently held that a defendant is entitled to an instruction on every defense or theory of defense having any support in the evidence, provided such evidence would support the consideration

duct, as: (a) Are specified by the definition of the offense, and (b) Negative a defense [ ]." Hawai'i Revised Statutes (HRS) § 702–205 (1993). The Hawai'i Penal Code further states that "[a] defense is a fact or set of facts which negatives penal liability." HRS § 701–115 (1993). As such, if a defendant has a defense to an offense, then the defendant has no penal liability with respect to that offense.

of that issue by the jury, no matter how weak, inconclusive, or unsatisfactory the evidence may be. Moreover, it is the trial judge's duty to insure that the jury instructions cogently explain the law applicable to the facts of the case and that the jury has proper guidance in its consideration of the issues before it.

100 Hawai'i 195, 206, 58 P.3d 1242, 1253 (2002) (internal quotation marks and citations omitted) (emphasis added). In *Locquiao*, defense counsel proposed an ignorance or mistake of fact jury instruction at trial, which the court declined to give, without explanation. *Id.* at 201, 58 P.3d at 1248. This court held that, in accord with the court's duty described above, "where a defendant has adduced evidence at trial supporting an instruction on the statutory defense of ignorance or mistake of fact, the trial court must, at the defendant's request, separately instruct as to the defense[.]" *Id.* at 208, 58 P.3d at 1255.

Thus, *Locquiao* stands for the proposition that when requested by a defendant, a court must give instructions as to any defenses having "any support in the evidence ... no matter how weak, inconclusive, or unsatisfactory that evidence may be." *Id.* at 206, 58 P.3d at 1253. Hence, no matter the weight of the evidence, the defendant is still entitled to instructions on those defenses. *State v. Lira*, 70 Haw. 23, 29, 759 P.2d 869, 873 (1988), reconsideration denied, 70 Haw. 662, 796 P.2d 1005 (1988). *Lira* stated that "[t]he applicable test [with respect to the trial court's duty to instruct the jury on defenses] is one of a presence or an absence of evidentiary support for a defense, not one of a consistency of defenses." *Id.* (emphasis added).

E.

Following *Locquiao*, in *Nichols*, this court was faced with the issue of whether the court should have given a "relevant attributes" instruction that went to one of the elements of the offense of terroristic threatening, even though defense counsel failed to request the instruction. *Nichols*, 111 Hawai'i at 338, 141 P.3d at 985. The defendant in *Nichols* was charged with the offense of Terroristic Threatening in the first degree, HRS § 707–716(1)(c) (1993) [6]. *Id.* at 328, 141 P.3d at 976. The defendant did not object to the jury instructions at trial, *id.* at 332, 141 P.3d at 979, but on appeal, the defendant argued that the circuit court erred in failing to instruct the jury that it could consider whether the complainant's fear of bodily injury induced by threat was objectively reasonable under the circumstances, based on the complainant's status as a police officer. *Id.* at 333, 141 P.3d at 980. This court held in *State v. Valdivia*, 95 Hawai'i 465, 24 P.3d 661 (2001), inter alia, that a "true threat" meant a threat "objectively susceptible to inducing fear of bodily injury." *Id.* at 479, 24 P.3d at 675. Hence, "the particular attributes of the defendant and the subject of the threatening utterance [the complainant] are surely relevant in assessing whether the induced fear of bodily injury, if any, is objectively reasonable." *Id.* Applying the law as set forth in *Valdivia*, *Nichols* held that the court erred in failing to give a jury instruction on the "relevant attribute" of the complainant as a police officer. *Id.*

Thus, *Nichols* stands for the proposition that the court has a duty to give jury instructions on all considerations relevant to the elements of a particular offense, even if the defendant does not request an instruction at trial.[7] As will be discussed subsequently, this court also held that "the same standard of review is to be applied both in cases in which a timely objection to a jury instruction

---

**6.** HRS § 707–716(1)(c) provides:

A person commits the offense of terroristic threatening in the first degree if the person commits terroristic threatening ... [a]gainst a public servant[.]

**7.** The majority notes that *Haanio* did not necessarily compel the holding in *Nichols*, because "[t]here is a clear difference between requiring sua sponte jury instructions on lesser included offenses versus defenses, in terms of the burden upon the trial court, and in terms of the effect upon trial strategy." Majority's opinion at 204, n. 9, 307 P.3d at 1150, n. 9 (citing *State v. Auld*, 114 Hawai'i 135, 148–49, 157 P.3d 574, 587–88 (App.2007) (Nakamura, C.J., concurring and dissenting)). However, as observed infra, the court may not abrogate its duty to properly instruct the jury, whether the instruction is with respect to a lesser included offense or a defense.

was made and those in which <u>no timely objection was made</u>." *Nichols*, 111 Hawai'i at 335, 141 P.3d at 982 (emphasis added).

## F.

In *Stenger*, the question was whether the defendant was entitled to an instruction on the mistake of fact defense, although defense counsel did not request one at trial, but did request an instruction on the claim of right defense. 122 Hawai'i at 271, 226 P.3d at 441. The defendant was convicted of Theft in the First Degree after failing to report changes in her household, income, and assets to the Department of Human Services (DHS), from whom she was receiving welfare benefits. *Id.* at 276–77, 226 P.3d at 446–47. During her testimony, the defendant stated that she did in fact provide timely notice to DHS of her household and income change, and that she believed that she had complied with DHS regulations. *Id.* at 282, 226 P.3d at 452.

Defense counsel orally requested that the jury be instructed on claim of right pursuant to HRS § 708–834 (Supp.1997),[8] because the defendant " 'believed she was entitled to the benefits that she obtained and exerted control over[.]' " *Id.* at 276, 226 P.3d at 446 (brackets in original). The court denied the request. *Id.* On appeal, the defendant alleged, *inter alia*, that the court erred (1) in denying her requested claim of right instruction, and (2) in not *sua sponte* giving her a mistake of fact instruction under HRS § 702–18 (1993). *Id.* The ICA held that the court should have given the claim of right instruction, but that the facts did not fit a mistake of fact situation. *State v. Stenger*, No. 27511, 2008 WL 5413898, at *1 (App. Dec. 31, 2008). Instead, the ICA concluded that the defendant had made a mistake of

law and thus no instruction was required as to mistake of fact. *Id.* at *4.

On certiorari, this court concluded that the ICA had erred in determining that the defendant was entitled to an instruction on the claim of right defense, but that she was entitled to a mistake of fact instruction, <u>which would encompass the defense of a claim of right</u>.[9] *Stenger*, 122 Hawai'i at 283, 226 P.3d at 454 ("[T]he Commentary [to HRS § 708–834] confirms that claim of right is a particular type of mistake of fact that would be logically encompassed under a general mistake of fact instruction.").

With respect to whether the defendant had been entitled to a mistake of fact instruction despite requesting a claim of right instruction at trial, *Stenger* held that, "we must determine (1) whether [the defendant] presented any evidence, 'no matter how weak,' that would have supported the jury's consideration of a mistake of fact defense and, if so, (2) whether the court's failure to instruct on mistake of fact was harmless beyond a reasonable doubt." *Id.* at 281, 226 P.3d at 452. Applying the facts to (1), this court stated that "[b]ased on the evidence presented, [the defendant] provided some basis for the jury to believe [ ] that she was mistaken as to the reporting requirements, ... and/or [ ] that [the defendant] was mistaken as to certain factual matters regarding her personal situation which caused her to misreport[.]" *Id.* at 282, 226 P.3d at 453. In other words, inasmuch as the defendant pursued a subspecies of the mistake of fact theory at trial and presented evidence to support that defense, she had effectively raised the mistake of fact defense at trial, and it followed that she was entitled to an instruction on that defense.

---

8. HRS § 708–834 provides, in relevant part:
 (1) It is a defense to a prosecution for theft that the defendant:
 ...
 (b) Believed that the defendant was entitled to the property or services under a claim of right or that the defendant was authorized, by the owner or by law, to obtain or exert control as the defendant did.

9. Contrary to the majority's continuing reference to *Stenger*, and the ICA's interpretation of the case, discussed *supra*, as a plurality opinion, it is in fact a majority opinion. To reiterate, Judge

Kim agreed with the majority and signed onto the majority opinion, stating that "I concur with the majority in both the holdings and the analysis supporting them on all issues in this case." *Stenger*, 122 Hawai'i at 296, 226 P.3d at 466 (Kim, J., concurring). "Plurality" is defined as "[a]n opinion lacking enough judges' votes to constitute a majority, but receiving more votes than any other opinion." *Black's Law Dictionary* 1201. Including Judge Kim's vote, the *Stenger* opinion garnered three votes and thus was a majority opinion.

*Stenger* thus stands for the proposition that, where the defendant <u>effectively</u> requested an instruction on a mistake of fact defense at trial, the court has a duty to instruct the jury on that defense, so long as the defendant "presented any evidence, 'no matter how weak,' that would have supported the jury's consideration of a mistake of fact defense."[10] *Id.* at 281, 226 P.3d at 452. Therefore, the failure to instruct the jury as to the mistake of fact defense was not harmless beyond a reasonable doubt. *Id.* at 282–83, 226 P.3d at 452–53.

## II.

Whether or not the defendant requests a defense instruction should make no difference in whether the court must instruct the jury on a defense. All of the State's arguments in its Application, and the majority's rule with respect to credible evidence, as discussed *infra*, suggest that such a distinction should be made.

Under the majority's holding, if a defendant fails to request a jury instruction on a particular defense, the defendant and/or the prosecution must have adduced "credible evidence"[11] as to that defense before a jury instruction will be given. *See* majority's opinion at 205, 307 P.3d at 1151 (where a jury instruction "is not requested by the defense and not given by the trial court, plain error ... exists if the defendant has met <u>his or her initial burden at trial of adducing credible evidence</u> of facts constituting a defense") (emphasis added). Where a defendant has requested an instruction, or effectively requested an instruction at trial, then, the defendant must only adduce "evidence," of a

particular defense, "no matter how weak, inconclusive, or unsatisfactory the evidence may be." *Id.* at 17, 226 P.3d 441 (quoting *Stenger,* 122 Hawai'i at 281, 226 P.3d at 451). However, according to the majority, in cases where the defendant does not request an instruction on a particular defense at trial, the defendant must have adduced "credible evidence" of that defense at trial. *Id.* at 25, 226 P.3d 441.

But where there is evidence abrogating or mitigating penal liability the court should not be relieved of the duty to give an instruction as to an applicable defense where the defendant has not requested an instruction, but on the other hand, be required to give an instruction, pursuant to *Locquiao,* only where it has been requested. With respect to criminal liability, both defendants should have the benefit of an appropriate instruction. Yet, in the State's and the majority's view, the defendants should be treated differently. That approach is antithetical to basic notions of fairness, and our solemn obligation to obtain just results and guard against erroneous outcomes. *See Haanio,* 94 Hawai'i at 414, 16 P.3d at 255 ("The judicial objectives within the context of the criminal justice system are to assess criminal liability and to determine appropriate punishment if and when warranted.").

Indeed, the principle underlying *Stenger* and *Locquiao* is that it would be wrong to uphold a defendant's conviction when no instruction was given to the jury on an apparent defense that existed in the evidence, and there is a reasonable possibility that the failure to instruct the jury on that defense contributed to the conviction. *See Locquiao,* 100 Hawai'i at 206, 58 P.3d at 1253. This is

---

10. It must be noted that, contrary to the State's contention, the majority opinion in *Stenger* does not say that the courts have a duty to *sua sponte* instruct on "nearly every conceivable defense."

11. The majority's opinion defines "credible evidence" as "evidence 'offering reasonable grounds for being believed.'" Majority's opinion at 205, n. 10, 307 P.3d at 1151, n. 10 (quoting *Webster's Ninth New Collegiate Dictionary* 305 (9th ed. 1988)). However, "credible" must mean not incredible, that is, not "too extraordinary and improbable to be believed[.]" *Merriam Webster's Collegiate Dictionary* 590 (10th ed. 1993). Such a meaning would not exclude weak, incon-

clusive, or unsatisfactory evidence, just evidence that is utterly fantastical.

The majority defines credible as "plausible," majority's opinion at 205 n. 10, 307 P.3d at 1151 n. 10 (citing *State v. Maelega,* 80 Hawai'i 172, 178 n. 9, 907 P.2d 758, 764 n. 9 (1995)). "Plausible" is defined as, among other things, "appearing worthy of belief[.]" *Merriam Webster's Collegiate Dictionary* 892. Thus, the majority opinion suggests to courts that they should make a typical credibility determination, in other words, that they should determine whether the evidence was "trustworthy." *See Black's Law Dictionary* 636. Such a directive would, as discussed *infra,* raise a number of serious concerns.

consistent with *Haanio*, which holds that instructions as to lesser included offenses that would reduce the severity of the charged offense must be given even if not requested or opposed by the parties.[12] 94 Hawai'i at 415, 16 P.3d at 246. The jury must therefore be instructed on defenses having any support in the evidence. A different conclusion would run the risk of wrongful convictions in cases where the defendant could have established a defense to the charges.

### III.

Furthermore, a view that would sanction the disavowal of jury instructions for strategic purposes is at odds with our precedent. This is the State's argument, echoed by the majority, that a distinction should be made between requested and unrequested defense instructions. However, respectfully, the argument that, for example, a defendant may not request a self-defense instruction because of concerns that it would hurt his credibility or distract the jury's attention from his best defense, *see Auld*, 114 Hawai'i at 148, 157 P.3d at 587 (Nakamura, C.J., concurring and dissenting), ignores the fact that the jury instructions are designed to instruct the jury, not to distract or confuse the jury, and it is the court's role, not the defendant's, to ensure that those instructions are proper and provide the jury with all the information determinative of an outcome that comports with fairness and justice. *See Haanio*, 94 Hawai'i at 415, 16 P.3d at 256 (holding that courts have the duty to properly instruct the jury on issues of criminal liability).

What proponents of this "strategic purpose" approach fail to realize is that jury instructions are by their nature outside the scope of the "adversary system." It is each party's role to develop for the jury its view of the facts, but the court's role is to instruct the jury on the law notwithstanding the parties' arguments to the jury or their view of the evidence. *Id.* As such, the court must instruct the jury on all defenses inhering in the evidence, in order to ensure that the jury is fully aware of the law applicable in the case. Thus, the majority in *Auld* properly held that "regardless of the defendant's theory of defense, the defendant and/or the defense counsel cannot stop the court from giving to the jury a self-defense instruction that is permitted by the evidence." *Auld*, 114 Hawai'i at 145, 157 P.3d at 584.

By distinguishing jury instructions with respect to defenses because of the defendant's right to develop his or her trial strategy, the majority would, in effect, allow the parties to delineate what the law is. Instead, trial strategy must take second place to the public interest in an intelligent and informed result, whether a case is decided by a judge or jury. The fact finder's role is to search for truth within the framework of the law, and it is in the best interest of society that we not allow parties to manipulate that process or withhold from the jury knowledge that a judge in a judge-only trial would have, inasmuch as the jury in a jury trial and the judge in a judge trial occupy the same role of ultimate decision-maker.

### IV.

### A.

"[C]redibility" is a matter solely for the fact finder to decide, and by imposing a credibility determination onto the jury instruction process, the majority effectively

---

**12.** Since *Haanio* was decided, it has become apparent that the fact that a jury finds a defendant guilty of the charged offense does not mean that the failure to give instructions on lesser included offenses is harmless. The practical effect of the failure to give lesser included offense instructions leaves the jury with the same "all or nothing" choice that ignores the public interest in reaching a result that best conforms to the facts. The absence of lesser-included offense instructions is not harmless because like an "all or nothing" "gamesmanship" approach, *see Haanio*, 94 Hawai'i at 414, 16 P.3d at 256, it presents the jury with only two options—guilty of the charged offense or not guilty—when in fact the evidence may admit of an offense of lesser magnitude than the charged offense. Accordingly, the qualification that "[t]he error is harmless because ... under [ ] standard jury instructions, the jury, 'in reaching a unanimous verdict as to the charged offense [or as to the greater included offense, would] not have reached, much less considered' the absent lesser offense," is in fact wrong. *Haanio*, 94 Hawai'i at 416, 16 P.3d at 257 (quoting *State v. Holbron*, 80 Hawai'i 27, 47, 904 P.2d 912, 932 (1995)).

usurps the jury's role.[13] Our court's precedent has mandated that a court should not weigh the evidence when determining whether or not to give a particular jury instruction, to avoid this dilemma. Thus, the majority's mandate that a defendant adduce "credible evidence" to the satisfaction of the judge as a prerequisite to a jury instruction is wrong, even where the defendant has failed to request the instruction. The standard of "weak, inconclusive, or unsatisfactory" evidence as sufficient for a jury instruction on a defense, rather than "credible evidence," dates back to *Territory v. Alcantara*, 24 Haw. 197, 208 (Haw.Terr.1918). In *Alcantara*, the Supreme Court of the Territory of Hawai'i quoted "an early English case" stating that,

> If there was any evidence, it was my duty [as judge] to leave it to the jury, <u>who alone could judge of its weight.</u> The rule that governs a judge as to evidence applies equally to the case offered on the part of the defendant, and that in support of the prosecution. <u>It will hardly be contended, that if there was evidence offered on the part of the defendant, a judge would have a right to take on himself to decide on the effect of the evidence, and to withdraw it from the jury.</u> Were the judge so to act, he might, with great justice, be charged with usurping the privileges of the jury, and <u>making a criminal trial, not what it is by our law, a trial by jury, but a trial by the judge.</u>

*Id.* at 208 (citing Best, J., *The King v. Burdett*, (1820) 3 Barn. & Ald. 717; 4 Barn. & Ald. 95) (emphases added). *Alcantara* has been cited by this court numerous times for the proposition that "[t]he court should not invade the jury's province of making factual determinations." *Riveira*, 59 Haw. at 154, 577 P.2d at 797. *See State v. Unea*, 60 Haw. 504, 509, 591 P.2d 615, 619 (1979) ("To refuse to so instruct the jury would be to invade its province in the trial of a case."); *Stenger*, 122 Hawai'i at 302 n. 2, 226 P.3d at 472 n. 2 ("The jurors, and they alone, are to judge of the facts, and weigh the evidence."); *see also State v. Quitog*, 85 Hawai'i 128, 145, 938 P.2d 559, 576 (1997) ("This court has adhered for over 140 years to the fundamental principle, which lies at the foundation of jury trial in every country blessed with that institution, that the jury is to pass upon the facts and the court upon the law.") (internal quotation marks and citations omitted) (brackets omitted).

The *Alcantara* standard ensures that judges will not usurp the jury's role by precluding it from considering legal theories that exist in the evidence even if the judge believes evidence supporting the theory is weak, inconclusive, or unsatisfactory. This is because the jury, of course, may view the significance of certain evidence differently from the judge. *See Stenger*, 122 Hawai'i at 302 n. 2, 226 P.3d at 472 n. 2 (" 'The law has established [the jury] because it believed that, from its numbers, the mode of their selection, and the fact that the jurors come from all classes of society, they are better calculated to judge of motives, weigh probabilities, and take what may be called a common sense view of a set of circumstances,

---

**13.** In the context of determining whether there is substantial evidence to support a conviction, a reviewing court will consider whether particular evidence is "credible," however, in this context, priority is given to the fact finder's credibility determination. For example, in reviewing a motion for judgment of acquittal, this court considers whether there is substantial evidence as to every material element of the offense charged, and substantial evidence, in turn is defined as "credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." *State v. Aplaca*, 96 Hawai'i 17, 21, 25 P.3d 792, 796 (2001). However, "[u]nder such a review, <u>we give full play to the right of the fact finder to determine credibility,</u> weigh the evidence, and draw justifiable inferences of fact." *Id.*

The appellate court thus defers to the fact-finder, i.e., the jury or the judge, as to matters of "credibility" in making its determination as to whether there was substantial evidence. *Id.* Moreover, "credibility" cannot be determined on appeal because the appellate court does not observe the demeanor of the witnesses, only the jury can. In this context, "credible" must mean evidence that is not "incredible." *See* discussion, *supra*. Under the majority's test, however, the court is required to make the credibility determination, based on whether a reasonable juror could harbor a "reasonable doubt." *See* majority's opinion at 207, 307 P.3d at 1153. A court could only make this determination if it itself viewed the evidence from the juror's point of view, thus necessarily weighing the evidence itself—a function of the jury only.

involving both act and intent, than any single man, however pure, wise and eminent he may be . . . .' ") (quoting *Alcantara*, 24 Haw. at 207 (citation omitted)).

Under *Alcantara* and subsequent cases, it is the jury's prerogative to decide the weight and effect of the evidence. This captures the essence of their separate roles: the weight and effect of the evidence is for the jury to decide, i.e., whether it is weak or not, while the legal options in the evidence must be identified by the judge in order that the jury may assess the relevance and significance of the evidence presented. *See Quitog*, 85 Hawai'i at 145, 938 P.2d at 576 (1997) (noting that " 'the jury is to pass upon the facts and the court upon the law' ") (quoting *State v. Kelekolio*, 74 Haw. 479, 515, 849 P.2d 58, 75 (1993)). The "no matter how weak, inconclusive, or unsatisfactory" standard stems from this rationale, and has been confirmed in a multitude of cases in this jurisdiction. *See Maelega*, 80 Hawai'i at 172, 178–79, 907 P.2d at 758, 764–65 (emphasis omitted) (quoting *State v. Pinero*, 75 Haw. 282, 304, 859 P.2d 1369, 1379 (1993)).[14]

The jury can only perform its task if it is fully informed of the law—including defenses the judge may find unworthy of consideration if it were the judge's decision to make. The existing standard recognizes the jury's paramount role in weighing the effect of the evidence. *See Riveira*, 59 Haw. at 154, 577 P.2d at 797 ("The rule requiring the submission of factual determinations to the jury if there is any evidence upon which the jury may act is based on the principle that credibility of witnesses and weight of the evidence are for the jury to decide.").

This proposition was reiterated in *State v. Kikuta*, 125 Hawai'i 78, 253 P.3d 639 (2011). In that case this court considered whether the court erred in failing to instruct jurors on the parental discipline defense after defense counsel had asked for the instruction. 125 Hawai'i at 84, 253 P.3d at 645. In consonance with *Maelega*, *Kikuta* held that, "[i]n order to invoke the parental discipline defense, a defendant is required to make a showing that the record contained <u>some</u> evidence supporting the [ ] elements [of the defense,]" *id.* (emphasis added), " 'no matter how weak, inconclusive, or unsatisfactory it might be, which was probative of the [ ] elements [of the defense].' " *Id.* at 90, 235 P.3d at 651 (quoting *Roman*, 119 Hawai'i at 478, 199 P.3d at 67) (citation omitted). *Kikuta* further stated that "the court's duty is to consider whether the defendant <u>has raised any evidence supporting the instruction, not to determine whether such a defense has merit</u>—that is for the jury to decide." *Id.* at 92, 253 P.3d at 653 (emphasis added). It is not for the judge, then, to decide whether a "reasonable juror could have a reasonable doubt" before giving an instruction regarding a defense, because that would encroach upon the jury's evaluation of the evidence.

### B.

On the other hand, the majority's test undermines the jury's function, inasmuch as the court must weigh the evidence first, i.e., predict whether based on the evidence a reasonable jury might consider acquittal, before allowing the jury to consider evidence upon which a theory of defense is based. This is in direct conflict with the principle that the judge not "take on himself [or herself] to decide on the effect of the evidence" and thus

---

**14.** *See Kikuta*, 125 Hawai'i at 90, 253 P.3d at 651; *Stenger*, 122 Hawai'i at 281, 226 P.3d at 451; *State v. Roman*, 119 Hawai'i 468, 478, 199 P.3d 57, 67 (2008); *State v. Mainaaupo*, 117 Hawai'i 235, 251, 178 P.3d 1, 18 (2008); *Locquiao*, 100 Hawai'i at 205, 58 P.3d at 1253; *State v. Hironaka*, 99 Hawai'i 198, 204, 53 P.3d 806, 812 (2002); *State v. Jones*, 96 Hawai'i 161, 168, 29 P.3d 351, 359 (2001); *State v. Pacheco*, 96 Hawai'i 83, 103, 26 P.3d 572, 592 (2001); *State v. Stocker*, 90 Hawai'i 85, 95, 976 P.2d 399, 409 (1999); *State v. Cabrera*, 90 Hawai'i 359, 370, 978 P.2d 797, 808 (1999); *State v. Sawyer*, 88 Hawai'i 325, 333, 966 P.2d 637, 645 (1998); *Lira*, 70 Haw. at 27, 759 P.2d at 871; *State v. Kaiama*, 81 Hawai'i 15, 24, 911 P.2d 735, 744 (1996); *State v. Moore*, 82 Hawai'i 202, 210, 921 P.2d 122, 130 (1996); *State v. McMillen*, 83 Hawai'i 264, 265, 925 P.2d 1088, 1089 (1996); *State v. Agrabante*, 73 Haw. 179, 196, 830 P.2d 492, 501 (1992); *State v. O'Daniel*, 62 Haw. 518, 527–28, 616 P.2d 1383, 1390 (1980); *Riveira*, 59 Haw. at 153, 577 P.2d at 797; *Unea*, 60 Haw. at 509, 591 P.2d at 619; *State v. Santiago*, 53 Haw. 254, 271, 492 P.2d 657, 667 (1971); *State v. Irvin*, 53 Haw. 119, 120, 488 P.2d 327, 327 (1971); *Territory v. Kaeha*, 24 Haw. 467 (Haw. Terr.1918).

"withdraw it from the jury." *Alcantara*, 24 Haw. at 208. For the law recognizes the jury may have a different view of the evidence than the judge, and it is the jury's, not the judge's role to weigh the evidence and determine its effect.

The *Alcantara* standard is substantiated by the law since it imposes a duty on the court to advise the jury of the defenses adduced in the evidence that would not otherwise be known to lay persons. The majority's test, on the other hand, requires the judge to weigh the evidence before the jury may consider it via the instructions, thus withdrawing the jury's prerogative, and depriving the parties of "a trial by jury" and substituting "a trial by the judges." *Id.* The "no matter how weak, inconclusive, or unsatisfactory" standard thus safeguards the jury's function of deciding what evidence is significant in arriving at the outcome of the trial, confines the court's role to informing the jury of the possible defenses raised in the evidence, and leaves the evaluation of whether the evidence supports any defenses to the jury.

### V.

Several problems are engendered by the "credible evidence" standard.

### A.

In a bench trial, the judge, by training and experience, should know of and thus be informed of all the available defenses, no matter how weak the evidence is, that supports such defenses. Therefore, in a judge trial, the judge would be aware of the full panoply of defenses adduced in the evidence.[15] In a judge-only trial, those defenses would be considered in the judge's deliberation toward his or her ultimate decision. In contrast, under the majority's approach, in a jury trial, the jury would be fully instructed on the applicable defenses only if the judge decides that "a reasonable juror could harbor a reasonable doubt" to the defendant's guilt based on a particular defense. Such a result is indefensible in the context of this court's precedent, which has established that the court has a duty to give instructions regarding lesser-included offenses, *Haanio*, 94 Hawai'i at 409–10, 16 P.3d at 250–51, regarding elements of the offense, *Nichols*, 111 Hawai'i at 335, 141 P.3d at 982, and for all defenses where requested by the defendant, *Locquiao*, 100 Hawai'i at 206, 58 P.3d at 1253. Hence, although a judge would know of all apparent defenses, the jury would only know of what a judge determined "a reasonable juror" should know.

However, the jury, as the trier of fact, should be informed of all legal theories that are supported by the facts in the evidence. If the court is aware that there is a basis in the evidence for a defense instruction, the court should not keep those instructions from the jury. The effect of holding otherwise is that the jury in a jury trial will be kept ignorant of defenses that are apparent to the judge from the evidence. This will directly impact the integrity of the trial and resulting verdicts and ultimately demean the role of the juror.

Defendants who exercise their right to jury trials then, would not be afforded the same treatment as a defendant in a bench trial, because the jury would be less informed as to applicable defenses.[16] This would create an unacceptable disparity between jury

---

**15.** The majority asserts that weak, inconclusive, or unsatisfactory evidence going to a particular defense would not necessarily be apparent to the trial court without defense counsel having drawn the attention of the court to it by requesting an instruction. Majority's opinion at 207 n.12, 307 P.3d at 1153 n.12. Respectfully, there should be few cases where the trial court, trained and experienced in the law and viewing the evidence at trial, would not recognize an applicable defense adduced in the evidence, but that an appellate court would in reviewing the written record on appeal. It is the function of the trial court as the manager of the trial process to be aware of the significance of the evidence and the trial courts should be credited with such competence.

**16.** Under the majority's "credible evidence" rule, a defendant would also be at a disadvantage in a jury trial scenario, because there is no corresponding right to a judge-only trial. *See Singer v. United States*, 380 U.S. 24, 36, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965); *Mehau v. Reed*, 76 Hawai'i 101, 111, 869 P.2d 1320, 1329 (1994) ("we note that there is no constitutional right to a non-jury trial under either the Hawai'i or United States constitutions").

trials and bench trials that would unduly burden the right to a jury trial. *See* U.S. Const. amend. VI; Haw. Const. Art. I, § 14 "( [i]n all criminal prosecutions, the accused shall enjoy the right to a speedy trial, by an impartial jury of the district wherein the crime shall have been committed ....") [17]; *see also* HRS § 806–60 (1993) ("Any defendant charged with a serious crime shall have the right to trial by a jury of twelve members."). This court has held that the right to a jury trial is "firmly ingrained in the American scheme of justice, [and] should be jealously protected against unjust intrusion." *State v. Olivera,* 53 Haw. 551, 554, 497 P.2d 1360, 1362 (1972), *overruled on other grounds by State v. Young,* 73 Haw. 217, 221, 830 P.2d 512, 515 (1992).

### B.

In evaluating whether a juror would harbor a reasonable doubt, the judge's view of what outcome could be "harbored" by a reasonable juror will necessarily control. The judge will thus withhold from the jury legal defenses that exist in the evidence unless they are consonant with his or her view of the evidence. The court's instructions ultimately, then, will reflect the court's evaluation of the evidence in arriving at what a reasonable juror would believe and thus, what the jury will be allowed to consider. In thus preempting the jury's evaluation of the evidence, the court will have shaped the contours of the case that will be deliberated on by the jury. In this way, the court will influence the jury's verdict by giving only instructions that conform to the court's view of the weight of the evidence, i.e., whether based on the evidence, a reasonable juror would harbor a belief of reasonable doubt as opposed to whether "any evidence" supports a defense instruction.

The court must remain impartial and cannot suggest to the jury the outcome that it should reach. *State v. Silva,* 78 Hawai'i 115, 117, 890 P.2d 702, 704 (App.1995) *abrogated on other grounds by Tachibana v. State,* 79 Hawai'i 226, 235, 900 P.2d 1293, 1302 (1995)

("[T]he right to an impartial judge [ ] inheres in section 5 of article I of the Hawai'i Constitution.") Yet, in directing the judge to decide on whether the reasonable juror could harbor a reasonable doubt, the majority's test accomplishes just that. In describing "credible evidence" as evidence based on whether "a reasonable juror could harbor a reasonable doubt," the judge's instructions will implicate the ultimate verdict in the case—namely whether in the judge's view a reasonable jury could believe that the defense abrogates or mitigates the defendant's criminal liability.

Such a determination would have a further adverse impact. By requiring the judge to evaluate the evidence as a condition to giving defense instructions, the majority's test contravenes a defendant's constitutional right to the presumption of innocence. *See State v. Samonte,* 83 Hawai'i 507, 519, 928 P.2d 1, 12 (1996) ("[A] criminal defendant has a constitutional right to a presumption of innocence.") In directing that, in order to be entitled to a defense instruction, evidence that would create doubt as to the defendant's ultimate guilt must be produced, the majority preemptively shifts the burden of persuasion to the defendant at a point in the litigation where the defendant is only required to satisfy the burden of production. *See* HRS § 701–115(2) (1993) (stating that the defendant has the burden of production before a defense may be considered by the trier of fact). Thus, under the test employed by the majority, the defendant ultimately must overcome through at least somewhat persuasive evidence, the hurdle of demonstrating that a "rational jury could harbor a reasonable doubt" as to his or her guilt. In effect, this means the defendant must demonstrate his or her ultimate innocence in order to be entitled to a defense instruction.

### C.

The majority's "credible evidence" standard also raises additional due process concerns, by impermissibly altering the structure of a jury trial, in violation of the fair

---

**17.** The analysis herein relies on the right to a jury trial as set forth by the Hawai'i constitution, Article I, Section 14.

trial and due process provisions of the Hawai'i constitution, article I, section 5. Here, applying the standard set forth by the majority effectively reverses the role of the judge and the jury, by requiring the judge to first determine the credibility of particular evidence, *see* majority's opinion at 207, 307 P.3d at 1153, before the jury may consider it. Instead of the jury, as fact-finder, weighing the evidence, the judge must conduct his or her own preliminary weighing of the evidence before deciding whether or not the jury should be instructed on the law relevant to that evidence. Where the jury's role as fact-finder is "usurped," the defendant's constitutional right to a fair trial is impermissibly burdened. For example, in *State v. Crail*, 97 Hawai'i 170, 35 P.3d 197 (2001), this court held that, where the court made improper comments in the jury instructions as to the location of certain evidence, the "essential duty of the jury was usurped...[,]" and thus there was a reasonable possibility that the defendant's constitutional right to a fair trial by jury was impinged by the court's erroneous comments. 97 Hawai'i at 181–82, 35 P.3d at 208–09. Similarly, where a court decides not to give a defense instruction based on what it thinks a "rational juror" would do, the jury's role has been "usurped" by the court, thus impinging on the defendant's right to a fair trial.

## VI.

Respectfully, the majority's basis for its credible evidence standard is erroneous.

### A.

The majority mistakenly draws the "credible evidence" standard from HRS § 701–115(2) [18] and its Commentary. *See* majority's opinion at 205, 207, 307 P.3d at 1151, 1153. However, HRS § 701–115(2) provides only that "[n]o defense may be considered by the trier of fact unless evidence of the specified fact or facts has been presented." The statute, therefore, contains no "credible evidence" requirement for a particular defense to be considered by the fact finder, but rather distinguishes between affirmative and non-affirmative defenses. It is only in the Commentary [19] that the term "credible evidence" is used. However, if as the Commentary suggests, "credible evidence" is required before the trier of fact may even consider a particular defense, then the Commentary would conflict with HRS § 701–115, which states quite simply that "evidence of the

18. HRS § 701–115 provides:
 (1) A defense is a fact or set of facts which negatives penal liability.
 (2) No defense may be considered by the trier of fact unless evidence of the specified fact or facts has been presented. If such evidence is presented, then:
 (a) If the defense is not an affirmative defense, the defendant is entitled to an acquittal if the trier of fact finds that the evidence, when considered in the light of any contrary prosecution evidence, raises a reasonable doubt as to the defendant's guilt; or
 (b) If the defense is an affirmative defense, the defendant is entitled to an acquittal if the trier of fact finds that the evidence, when considered in light of any contrary prosecution evidence, proves by a preponderance of the evidence the specified fact or facts which negative penal liability.
 (3) A defense is an affirmative defense if:
 (a) It is specifically so designated by the Code or another statute; or
 (b) If the Code or another statute plainly requires the defendant to prove the defense by a preponderance of the evidence.
 (Emphasis added.)

19. The Commentary to HRS § 701–115 provides, in relevant part:

The Code establishes two classes of defenses. As to both, it places the initial burden on the defendant to come forward with some credible evidence of facts constituting the defense, unless, of course, those facts are supplied by the prosecution's witnesses.
As to the burden of persuasion, two different rules are codified. In the case of defenses which are not affirmative, the defendant need only raise a reasonable doubt as to the defendant's guilt. The other side of the coin is that the prosecution must prove beyond a reasonable doubt facts negativing the defense. The prosecution in fact does this when the jury believes its case and disbelieves the defense. In the case of affirmative defenses, the burden on the defendant increases. Now the defendant must prove by a preponderance of the evidence facts which negative the defendant's penal liability. Subsection (4) defines "affirmative defense," making it clear that this type of defense needs special legislative prescription. Unless the Legislature has made a particular defense affirmative, the defendant's burden is only to raise a reasonable doubt.
(Emphasis added.)

specified fact or facts" must be presented. The Commentary is not binding on this court, however, and thus the statute, HRS § 701–115, must control. *See Maelega,* 80 Hawai'i at 178, 907 P.2d at 764 ("Although the commentary may be used as an aid in understanding the provisions of the Hawai'i Penal Code, it may not be used as evidence of legislative intent.") (citing HRS § 701–105 (1993)) (internal quotation marks omitted) (brackets and alterations omitted).

Moreover, the conflict concerning the use of the term "credible" in the Commentary to HRS § 701–115 and HRS § 701–115(2) was resolved in *Maelega,* 80 Hawai'i at 177–79, 907 P.2d at 763–765, contrary to the majority's position, *see* majority's opinion at 206–07, 307 P.3d at 1152–53. In *Maelega,* this court expressly overruled *State v. Nobriga,* 10 Haw.App. 353, 873 P.2d 110 (1994), which relied on the same Commentary to HRS § 701–115 as the majority. *Nobriga* had held that the defendant bore the initial burden of "com[ing] forward with some credible evidence of facts supporting the defense" before he was entitled to a jury instruction on that defense. *Maelega,* 80 Hawai'i at 178, 907 P.2d at 764 (quoting *Nobriga,* 10 Haw. App. at 357, 873 P.2d at 113) (emphasis in original).

> The defense of extreme mental or emotional disturbance places the initial burden on the defendant to come forward with some credible evidence of facts constituting a defense unless those facts are supplied by the prosecution's witnesses. If this occurs, the prosecution must then prove beyond a reasonable doubt that the defendant was not at the time of the offense under the influence of extreme mental or emotional disturbance for which there is a reasonable explanation.

*Id.* at 176, 907 P.2d at 762 (first emphasis in original, second emphasis added). This court concluded that the jury instructions given by the court were erroneous in stating that the defendant had the initial burden of producing credible evidence of the Extreme Mental or Emotional Disturbance (EMED) defense. *Id.* at 177, 907 P.2d at 763.

*Maelega* held in reference to the term "credible," that "the court [had] impliedly instructed the jury that the burden under HRS § 701–115(2) was a question of fact for the jury to decide." *Id.* "In other words," *Maelega* observed, "the jury may have reasonably, but impermissibly interpreted the court's [EMED] instruction as requiring Maelega to convince it that the evidence tending to support his claim was credible ... before considering whether the prosecution had disproved this defense beyond a reasonable doubt." *Id.* at 178, 907 P.2d at 764 (first emphasis added, second emphasis in original). Consequently, "there was a substantial risk that the jury may have reached its verdict by improperly shifting the burden of proof from the prosecution to Maelega...." *Id.*

Hence, contrary to the majority's interpretation of *Maelega,* majority's opinion at 206–07, 307 P.3d at 1152–53, the issue in the case was not simply that the burden of production was included as part of the jury instruction, but that the term "credible" was wrongly used in connection with the defendant's initial burden of production. *See Maelega,* 80 Hawai'i at 178–79, 907 P.2d at 764–65. This court's decision in *Maelega* indicates that the term "credible," as included in the Commentary to HRS § 701–115(2), should not be employed as a condition of giving jury instructions under any circumstances. *Maelega* explicitly invalidated the use of the term "credible", as it is used by the majority and reaffirmed that if "evidence would support consideration of [a defense] by the jury, no matter how weak, inconclusive, or unsatisfactory the evidence may be" the instruction must be given:

> The *Nobriga* court clearly relied upon the commentary to HRS § 701–115 when it stated that a defendant bears the initial burden of "com[ing] forward with some credible evidence of facts supporting the defense[.]" 10 Haw.App. at 359, 873 P.2d at 113 (emphasis added). Although "[t]he commentary ... may be used as an aid in understanding the provisions of [the Hawai'i Penal] Code, ... [it may] not [be used] as evidence of legislative intent." HRS § 701–105[ ]. Our cases have firmly established that "a defendant is entitled to an instruction on every defense or theory of defense having any support in the evidence, provided such evidence would support the consideration of that issue by the

jury, no matter how weak, inconclusive, or unsatisfactory the evidence may be." *Pinero*, 75 Haw. at 304, 859 P.2d at 1379 (emphases added) (internal quotation marks and citations omitted). *See also* [ ] *Lira*, 70 Haw. [at] 27, 759 P.2d [at] 871[ ]; [ ]*O'Daniel*, 62 Haw. [at] 527–28, 616 P.2d [at] 1390[ ].

*Id.* (emphases added). Further, this court expressly rejected the condition espoused by the majority in the instant case, that an instruction must be supported by credible evidence before it is given:

> Accordingly, we read *Nobriga* to state the obvious: If there is no evidence in the record to support a separate and distinct defense, then the defendant is not entitled to an instruction on that defense. To the extent that *Nobriga*'s reference to credible evidence is inconsistent with *Pinero II*, supra, it is hereby overruled.

*Id.* (emphasis added).

Consequently, as evidenced in the quoted passage above, *Maelega* rejected the majority's use of the term "credible" from the Commentary to HRS § 701–115, as in conflict with this court's settled case law on giving defense instructions. *Id.*

### B.

*Maelega* states that "[b]y giving the EMED instruction to the jury, the circuit court implicitly acknowledged that, based on the record, a reasonable juror could harbor a reasonable doubt as to whether Maelega acted while under extreme emotional disturbance...." *Id.* at 177, 907 P.2d at 763. The majority garners from this its definition of "credible evidence," namely that "a reasonable juror could harbor a reasonable doubt" as to the defendant's guilt. Majority's opinion at 207, 307 P.3d at 1153. However, the statement about a "reasonable juror" from *Maelega* has nothing to do with whether the evidence is credible or not or whether the judge should give the instruction in the first place.

Instead, *Maelega* simply applied HRS § 701–115(2)(a), which provides that, with respect to non-affirmative defenses (i.e., EMED), "the defendant is entitled to an acquittal if the trier of fact finds that the evidence, when considered in the light of any contrary prosecution evidence, raises a reasonable doubt as to the defendant's guilt[.]" *Id. Maelega*'s statement that the court, by giving an instruction, "implicitly acknowledged that, based on the record, a reasonable juror could harbor a reasonable doubt ...." is made in dicta, and the case cited after that sentence does not use the language "reasonable juror could harbor a reasonable doubt," but instead, supports the view that "evidence" must be adduced before an instruction on a defense can be considered. *See id.* (citing *State v. Russo*, 69 Haw. 72, 76, 734 P.2d 156, 158 (1987)). This statement from *Maelega*, then, does not support the majority's transformation of a "reasonable juror could harbor a reasonable doubt" statement into a test for the trial court to apply as a condition to giving a defense instruction where unrequested by the defendant.

### C.

The majority focuses on the fact that *Locquiao* and *Stenger* both cited to the Commentary to HRS § 701–115. *See* majority's opinion at 206 n.11, 307 P.3d at 1152 n.11 ("As recently as *Locquiao* and *Stenger*, we continued to favorably cite to the Commentary to HRS § 701–115."). However, in extracting the "credible evidence" standard from those cases, for use in determining when particular jury instructions should be given, the majority misconstrues the purpose for which the Commentary was quoted in *Locquiao* and *Stenger*.

In *Locquiao*, as noted, defense counsel had requested an ignorance-or-mistake-of-fact defense, and the court refused the instruction. 100 Hawai'i at 201, 58 P.3d at 1248. *Locquiao* first reiterated that "[t]his court has consistently held that '"a defendant is entitled to an instruction on every defense or theory of defense having any support in the evidence, provided such evidence would support the consideration of that issue by the jury, no matter how weak, inconclusive, or unsatisfactory the evidence may be."'" *Id.* at 206, 58 P.3d at 1253 (citations and internal quotation marks omitted). Since the instruction requested in *Locquiao* was a defense instruction, this court then explained the background as to how defenses operate to

negate penal liability, using HRS § 702–204 (1993), HRS § 702–205, HRS § 701–115 and its Commentary, and case law. *Id.*

*Locquiao* concluded that the defendant was entitled to an instruction on the mistake of fact defense and the prosecution bore the burden of disproving the defense. No mention whatsoever was made of whether the evidence adduced by the defendant, "that he was unaware that the 'glass material' recovered [ ] was an 'ice pipe' and that the 'glass material' contained methamphetamine[,]" was, in fact, credible. *Id.* Although this court in *Locquiao* briefly quoted the Commentary to HRS § 701–115, the purpose was only to explain how the burden shifted with respect to defenses, and the "credible evidence" requirement was not actually applied by this court. *See id.*

In *Stenger*, the State had argued that "the [court] did not commit plain error in failing to give the jury an instruction on the defense of mistake-of-fact where there was no credible evidence to warrant such an instruction." 122 Hawai'i at 277, 226 P.3d at 447. *Stenger* quoted from *Locquiao*, including the Commentary to HRS § 701–115, again, explaining how defenses operate in negating penal liability. *Id.* at 280, 226 P.3d at 450. Then, *Stenger* reviewed the holding in *Locquiao*, emphasizing the fact that the defendant in *Locquiao* was entitled to an instruction on the ignorance-or-mistake of fact defense. *Id.* *Stenger* explicitly rejected the "credible evidence" standard proposed by the State. *Id.* at 281, 226 P.3d at 441. It concluded that "[t]hus, we must determine [ ] whether Petitioner presented any evidence, 'no matter how weak,'" that would have supported the jury's consideration of a mistake of fact defense .... *Id.* (Emphasis added.)

Respectfully, it is therefore incorrect to say that "[a]s recently as *Locquiao* and *Stenger*, [this court] continued to favorably cite to the Commentary to HRS § 701–115." Majority's opinion at 206 n. 11, 307 P.3d at 1152 n. 11. Instead, both *Locquiao* and *Stenger* rejected the requirement that a defendant adduce "credible evidence" before being entitled to a jury instruction, and instead held in favor of the well-established "no matter how weak," standard. *Stenger*, 122 Hawai'i at 281, 226 P.3d at 461 (citing *Locquiao*, 100 Hawai'i at 205, 58 P.3d at 1252) (internal quotation marks omitted). Like *Maelega*, *Locquiao* and *Stenger* rejected the "credible evidence" term as used in the Commentary to HRS § 701–115.

### D.

In sum, nothing in HRS § 701–115, its Commentary, *Stenger*, *Locquiao*, or in any other Hawai'i case supports the heightened burden imposed by the majority for defendants who fail to request a jury instruction to which they are otherwise entitled.

### VII.

Unlike the majority, I would uphold *Nichols*, requiring that if the court erred in failing to properly instruct the jury, and the defendant did not object at trial, this court need not first undertake a plain error review, but will consider whether the error was harmless beyond a reasonable doubt. 111 Hawai'i at 337, 141 P.3d at 984. Accordingly, I disagree with the majority's holding that adherence to the precedent set forth in *Nichols* does not require the merger of the plain error and harmless error standards of review.

### A.

Generally, if a party fails to make a timely objection at trial, this court will note error "where plain error has been committed and substantial rights have been affected thereby." *State v. Miller*, 122 Hawai'i 92, 100, 223 P.3d 157, 165 (2010) (quotation marks omitted). Hawai'i Rules of Penal Procedure (HRPP) Rule 52(b) states that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Indeed, an appellate court "will apply the plain error standard of review to correct errors which seriously affect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights." *State v. Ho*, 127 Hawai'i 415, 431, 279 P.3d 683, 699 (2012) (citing *Miller*, 122 Hawai'i at 100, 223 P.3d at 165) (emphasis added) (citations omitted). Under plain error review, if the substantial rights of the defendant are implicated, then

"the error may be corrected on appeal unless it was harmless beyond a reasonable doubt." *Id.*

Regardless of whether defense counsel requested a specific jury instruction at trial, however, as discussed, this court has held the duty to properly instruct the jury lies with the trial court. Since the ultimate responsibility for the jury instructions lies with the court, an error in such instructions does not represent the type of error that, if not objected to at trial, requires a plain error determination. At trial, it is each party's role to provide to the jury its view of the facts, the court's role to instruct the jury on the law, and the jury's role to render true verdicts based on the facts presented. *See Haanio*, 94 Hawai'i at 415, 16 P.3d at 256. Where the court errs in giving the jury proper instructions, the court, in effect, undermines the jury's delegated function. *Id.* (citing *State v. Bullard*, 97 N.C.App. 496, 389 S.E.2d 123, 124 (1990)).

### B.

The incongruity between plain error review and the court's duty with respect to jury instructions was first recognized by the ICA in *State v. Astronomo*, 95 Hawai'i 76, 82, 18 P.3d 938, 944 (App.2001). There, the ICA reasoned that because the ultimate responsibility to instruct the jury lies with the court, counsel did not have a duty to object, and thus the harmless error standard of review applied to erroneous jury instructions regardless of whether or not an objection was made at trial.

In *Nichols*, this court explicitly affirmed *Astronomo*, and held that " 'with respect to jury instructions, the distinction between harmless error and plain error is a distinction without a difference.' " 111 Hawai'i at 336, 141 P.3d at 983 (quoting *Astronomo*, 95 Hawai'i at 82, 18 P.3d at 938). This court noted that it had "granted certiorari primarily to address [the defendant's] contention that the ICA misstated the standard of review for erroneous jury instructions in this jurisdiction." *Id.* at 329, 141 P.3d at 976.

*Nichols* agreed with the defendant that "in light of our consistent precedent regarding the duty of the trial court to instruct the jury, the ICA gravely erred in concluding that the duty of the trial court is limited to avoiding plain error." *Id.* at 335, 141 P.3d at 982:

> Consequently, we hold that, although as a general matter forfeited assignments of error are to be reviewed under the HRPP Rule 52(b) plain error standard of review, in the case of erroneous jury instructions, that standard of review is effectively merged with the HRPP Rule 52(a) harmless error standard of review because it is the duty of the trial court to properly instruct the jury. As a result, <u>once instructional error is demonstrated, we will vacate, without regard to whether timely objection was made, if there is a reasonable possibility that the error contributed to the defendant's conviction, i.e.,</u> that the erroneous jury instruction was not harmless beyond a reasonable doubt.

*Id.* at 337, 141 P.3d at 984 (emphasis added).

### C.

With respect to the application of the standard of review in *Nichols*, the majority notes that "despite its 'merger' holding, [the *Nichols* court] continued to engage in a two-step, plain-error-then-harmless error review in analyzing instructional error." Majority's opinion at 204, 307 P.3d at 1150. However, although *Nichols* did engage in a two-step review, the analysis was consistent with its holding quoted above and did not implicate plain error review. *Nichols* first determined that "[b]ecause the prosecution's confession of error is not binding upon the appellate court, we must still first determine whether the circuit court erred in failing to give the relevant attributes instruction." 111 Hawai'i at 337, 141 P.3d at 985. On this point, as noted *supra*, *Nichols* concluded that the instruction was defective under *Valdivia*, in which this court had held, under similar facts, that failure to instruct the jury that the threatened person's status and training as a police officer was relevant to the charge of terroristic threatening was reversible error. *Nichols*, 111 Hawai'i at 338, 141 P.3d at 985

(citing *Valdivia*, 95 Hawai'i at 470, 24 P.3d at 666).

Thus, *Nichols* first concluded that the failure to give a relevant attributes instruction was an error. The majority characterizes this as a "plain error" determination, seemingly based solely on the fact that the *Nichols* opinion states, prior to its analysis, that the "failure to give a 'relevant attributes' instruction was plain error." Majority's opinion at 204, 307 P.3d at 1150 (quoting *Nichols*, 111 Hawai'i at 338, 141 P.3d at 985). However, *Nichols'* holding on the standard of review, discussed *supra*, and the portion of the opinion where *Nichols* applies its standard of review holding to the facts indicates that the term "plain error" in the section quoted by the majority is not indicative of the standard of review but rather is simply an acknowledgment that the court made an error. *Nichols*, 111 Hawai'i at 338, 141 P.3d at 985 (responding to the defendant's argument that "the circuit court plainly erred.")

Because this court made a determination that an error took place does not imply that this court engaged in "plain error" review. Rather, it indicates that this court was determining whether, as the defendant posited, the court had in fact made an error.[20] In order to genuinely determine whether the error was "plain" error, the *Nichols* court would have needed to determine whether " 'the substantial rights of the defendant have been affected adversely,' " or the error would " 'affect the fairness, integrity, or public reputation of judicial proceedings ....' " *Id.* at 335, 141 P.3d at 981 (quoting *Sawyer*, 88 Hawai'i at 330, 966 P.2d at 642). It did not. Therefore, *Nichols* did not "engage in a two-step, plain-error-then-harmless error review in analyzing instructional error." *See* majority's opinion at 204, 307 P.3d at 1150.

### D.

Respectfully, the majority improperly describes plain error review in its application to the facts of this case. The majority states that "[i]n the case of a jury instruction on mistake of fact that is not requested by the defense and not given by the trial court, plain error affecting substantial rights exists if the defendant had met his or her initial burden at trial of adducing credible[ ] evidence of facts constituting the defense (or those facts are supplied by the prosecution's witnesses)." Majority's opinion at 205, 307 P.3d at 1151 (citations omitted) (emphasis added). However, by determining whether a defendant had met his or her initial burden of adducing credible evidence of facts constituting the defense, the majority is not determining whether there is "plain error," but rather, whether the court erred in the first place. Thus, as in its analysis of *Nichols*, respectfully, the majority unduly implicates "plain error" review into an appellate court's determination of whether any error has occurred. Instead, true plain error review occurs subsequent to an initial determination that an error has occurred and that the error was not objected to at trial. Only then will an appellate court conduct plain error review to determine whether to address the error on appeal.

In the interests of upholding this court's precedent in *Nichols*, recognizing the duty of the court to properly instruct the jury, and clarifying the standard for future cases, I would reaffirm that, once an appellate court determines that the court erred in failing to give a defense instruction, that court need not consider whether the error satisfies the "plain error" standard described above, but can proceed directly to an analysis of whether the error was harmless beyond a reasonable doubt. Thus, in accord with *Nichols*, where the court erred in failing to give proper jury instructions, plain error and harmless error review are merged.

**20.** The majority states that *Nichols* first determined that the court's failure to give the "relevant attributes" instruction was plain error because "under [ ] *Valdivia*, the failure to instruct on relevant attributes in a terroristic threatening case is reversible error in any event, whether or not the relevant attributes instruction is requested (as it is in *Valdivia)* or unrequested (as it was in *Nichols)*." Majority's opinion at 204, 307 P.3d at 1150. In *Valdivia*, the "relevant attributes" instruction was requested at trial, and this court held that such an instruction "applies in the context of prosecution for terroristic threatening." 95 Hawai'i at 479, 24 P.3d at 661. *Valdivia* then determined that "we cannot say that the failure of the circuit court to so instruct the jury in the present matter did not contribute to [the defendant's] conviction of first degree terroristic threatening[.]" *Id.* Thus, respectfully, by citing *Valdivia*, it does not follow that the *Nichols* court was engaging in plain error review.

## VIII.

In its Application to this court, the State argues that *Stenger* should be overturned. The State's arguments are discussed in Appendix A, attached hereto, inasmuch as not all of the State's arguments are germane to the majority's holding.

## IX.

Our trial courts are capable of adhering to the standard of administering the law that has been established with respect to unrequested instructions. On the other hand, in our role as the reviewing court, we have the ultimate responsibility for ensuring that cases are properly tried on the applicable law. Respectfully, the diminishment of the trial court's obligation and of our oversight under the majority's rule will ultimately be reflected in a lower standard of justice in our state. For the foregoing reasons, I respectfully concur in part and dissent in part.

## APPENDIX A TO CONCURRING AND DISSENTING OPINION BY ACOBA, J.

### I.

#### A.

First, the State takes issue with the law that courts have a duty to instruct on a defense founded in the evidence, no matter how weak, even if such an instruction was not requested. It argues that such a holding places a duty on the court to identify every defense supported by some evidence, no matter how attenuated. This argument rests on a basic misapprehension of the court's role. Obviously, the court must assess the evidence in order to determine what instructions to give. But to impose that duty on the court is not improper. The rule that the court is responsible for properly instructing the jury precedes *State v. Stenger*, 122 Hawai'i 271, 226 P.3d 441 (2010), as noted, and has been repeatedly affirmed by this court. *State v. Haanio*, 94 Hawai'i 405, 415, 16 P.3d 246, 256 (2001) (holding that "the trial courts, not the parties, have the duty and ultimate responsibility to insure that juries are properly instructed on issues of criminal liabili-

ty"); *State v. Kupau*, 76 Hawai'i 387, 395, 879 P.2d 492, 500 (1994), *overruled on other grounds by Haanio*, 94 Hawai'i at 414, 16 P.3d at 246 (same). *See also State v. Nakamura*, 65 Haw. 74, 79, 648 P.2d 183, 187 (1982) (noting that trial court's instructions fully apprised jury in easily understandable language of law to be applied); *State v. Feliciano*, 62 Haw. 637, 643, 618 P.2d 306, 310 (1980) ("[I]t is well settled that the trial court must correctly instruct the jury on the law.... This requirement is mandatory to insure the jury has proper guidance in its consideration of the issues before it.").

Further, as discussed before, the fact that the defendant did not ask for the instruction should make no difference. By limiting the court's duty to instruct only on those defenses requested by the defendant, even when the evidence supports other defenses, the State's position increases the risk of improper convictions.

#### B.

Second, the State argues that it is not the responsibility of the court to implement defense strategy, and the prosecution should not be penalized where defense counsel fails to request a defense instruction. The State proffers that the prosecution must identify and submit instructions omitted by the court or else risk the result of "virtually automatic retrial." The State's concern in this instance is insupportable, inasmuch as it misidentifies the duty of the court as the lawgiver, independent of the parties' trial strategy. *Haanio*, 94 Hawai'i at 415, 16 P.3d at 256. Furthermore, any argument on appeal that the court erred in failing to provide a defense instruction is subject to harmless error review. *See State v. Nichols*, 111 Hawai'i 327, 337, 141 P.3d 974, 984 (2006). Thus, if the defense theory is, for example, a "barely glimpsed theory on the margins," *Stenger*, 122 Hawai'i at 297, 226 P.3d at 467 (Kim, J., concurring), and a defense instruction on such a theory would not have been material to the case, it will be deemed harmless beyond a reasonable doubt.

## C.

Third, the State argues that unrequested defense instructions would interfere with a defendant's right to determine his or her own defense. The State cites to the concurring and dissenting opinion in *State v. Auld*, 114 Hawai'i 135, 148, 157 P.3d 574, 587 (App. 2007), which suggests that there are "sound reasons why a trial court should not be required to give a self-defense instruction that a defendant, for strategic reasons, does not want." 114 Hawai'i at 148, 157 P.3d at 587 (Nakamura, C.J., concurring and dissenting). It contends "[t]hat the defendant and his counsel are in a better position than the trial court to know how to most effectively defend against the charges." *Id.* Although the State correctly points out that the defendant has the right to determine his or her defense, respectfully, what the concurrence and dissent in *Auld* and the State apparently choose to ignore is our precedent announcing that this court has already come down on the side of a public interest in fair trials that <u>overrides</u> any desire of the parties to strategically <u>avoid complete and correct jury instructions</u> based in the evidence.

The search for the truth, and a "trial court's ultimate obligation to promote justice in criminal cases[,]" *Haanio*, 94 Hawai'i at 414, 16 P.3d at 256, is furthered by leaving it to the jury to determine what happened based on the evidence adduced, instead of speculating that "[a] defendant's choice not to assert self-defense may be based on the defendant's knowledge of why he or she acted or what really happened." *Auld*, 114 Hawai'i at 148, 157 P.3d at 587 (Nakamura, C.J., concurring and dissenting). The same justice and truth-seeking rationales raised in *Haanio* in opposition to allowing a defendant to tactically forego an included offense instruction are applicable in the instant case.

Respectfully, by permitting the defendant or prosecution to limit the applicable law the jury can consider, despite the evidence adduced, the State and the majority enhance the risk that the jury would not reach the result that best accords with justice in a particular case, or would not arrive at an outcome that best serves the public interest in a jury that is fully and accurately informed. This would subject our system of justice to the vicissitudes of advocates or to credibility predeterminations by a court.[21] As *Haanio* notes, "[o]ur courts are not gambling halls but forums for the discovery of truth...." *Id.* (quoting *People v. Barton*, 12 Cal.4th 186, 47 Cal.Rptr.2d 569, 906 P.2d 531, 541 (1995) (stating that "neither the defendant nor the People have a right to incomplete instructions")). Indeed, if evidence supporting a legal defense is introduced at trial, what can the justification be for keeping that defense from the jury? As discussed *supra,* a justification based on parties' trial strategy is not warranted in light of the importance of jury instructions in the truth-seeking function of trial and the potential for resulting inequality between defendants in jury trials and defendants in bench trials.

Furthermore, nothing precludes defense counsel from submitting proposed defense instructions. The situation addressed in the instant case only arises where defense counsel has not requested a jury instruction as to a particular defense. On this point, *Haanio* stated, "[o]f course, the prosecution and the defense may, as they do in the ordinary course, propose particular included offense instructions, and our holding is not to be taken as discouraging or precluding their desire or felt obligation to do so." 94 Hawai'i at 415, 16 P.3d at 256.

Chief Justice Moon's dissent to *Stenger* adopts a theory from the Supreme Court of California, stating that, " 'a trial court's duty to instruct, *sua sponte,* or on its own initia-

---

21. Allowing the defendant to waive instructions as to a particular defense could also allow the defendant to "game" the system. A defendant could "obliquely" raise evidence relevant to a particular defense at trial, "while avoiding the court's instruction that would enable the jury to properly evaluate the defense, thereby evading the affirmative evidentiary requirements" that must be satisfied for that defense. *People v. DeGina*, 72 N.Y.2d 768, 537 N.Y.S.2d 8, 533 N.E.2d 1037, 1042 (1988) (Alexander, J., dissenting).

tive, on particular defenses is more limited, arising only if it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case.'" *Stenger*, 122 Hawai'i at 298, 226 P.3d at 468 (quoting *Barton*, 47 Cal.Rptr.2d 569, 906 P.2d at 536) (internal quotations omitted) (emphases added).

Chief Justice Moon's standard is obviously inconsistent with our own precedent, however. First, it is not necessary that the defense "rely" on a defense for the court to issue an instruction on other defense theories evident in the evidence This is the lesson of *Haanio*, 94 Hawai'i at 415, 16 P.3d at 256 ("A trial court's failure to inform the jury of its option to find the defendant guilty of the lesser offense would impair the jury's truth-ascertainment function.") (citation omitted). Next, Chief Justice Moon's standard is plainly wrong in light of this court's precedent holding that a defendant may present inconsistent defenses and the court still must instruct the jury on those defenses. *See State v. Lira*, 70 Haw. 23, 29, 759 P.2d 869, 873 (1988).

Finally, this court has never imposed a "substantial evidence" standard to support the giving of an unrequested instruction on a defense adduced in the evidence. "Substantial evidence" is defined by *Black's Law Dictionary*, in relevant part, as "[e]vidence that a reasonable mind could accept as adequate to support a conclusion; evidence beyond a scintilla." *Black's Law Dictionary* 640. As discussed, requiring that the defendant have adduced more than "some evidence, no matter how weak," *State v. Kikuta*, 125 Hawai'i 78, 90, 253 P.3d 639, 651 (2011), in order to be entitled to a jury instruction on a defense would usurp the jury's role in a trial. Application of the "substantial evidence" standard as a basis for giving an instruction is particularly troubling in cases of unrequested jury instructions because, where an attorney has focused on one defense, that attorney may not have attempted to adduce substantial

evidence of other defenses on which the jury should be instructed. *Cf. Stenger*, 122 Hawai'i at 282, 226 P.3d at 452 ("Merely because the court provided an instruction as to the requisite state of mind for theft in the first degree by deception does not render the failure to instruct on mistake of fact harmless. Under the facts presented here, there is a reasonable possibility that the jury, if provided with the separate mistake of fact instruction, could have found that [the Petitioner did not knowingly commit the crime].").

### D.

Fourth, the State argues that requiring the court to provide jury instructions on all applicable defenses would somehow allow a defendant "two bites at the same acquittal apple." Related to its second argument, the State's position appears to be that the defendant will be encouraged not to object to the omission of a defense instruction. Again, this assumes that the court has abrogated its duty to correctly instruct the jury as to applicable defenses that inhere in the evidence. Also, for the reasons discussed before, it is neither the role of the defendant nor the prosecution to correctly charge the jury; it is the court's role, and any appeal based on the court's failure to properly instruct the jury is subject to harmless error review.

The State's reasoning was effectively rejected by the United States Supreme Court in *Henderson v. United States*, —— U.S. ——, 133 S.Ct. 1121, 185 L.Ed.2d 85 (2013). In that case, the Court held that plain error could be recognized so long as the error was plain at the time of appellate review, even if it was not clear that the trial court erred under the applicable law at the time of trial. 133 S.Ct. at 1130. In its decision, the Supreme Court addressed the argument that such a holding would remove defense counsel's incentive to call attention to potential error at trial. *Id.* at 1128–29. The Court noted that "counsel normally has other good reasons for calling a trial court's attention to potential error—for example, it is normally to the advantage of counsel and his client to

get the error speedily corrected." *Id.* at 1123.

The Court went on to reason that, "[i]f there is a lawyer who would deliberately forgo objection <u>now</u> because he perceives some slightly expanded chance to argue for 'plain error' <u>later</u>, <u>we suspect that, like the unicorn, he finds his home in the imagination, not in the courtroom.</u>" *Id.* at 1129 (first emphases in original, second emphasis added). Similarly, it would be an "imagin[ed]" defense counsel, i.e., a "unicorn," who would deliberately forgo an objection to an instruction that could assist his or her client, because he or she would perceive some theoretical chance for retrial reliant on an appellate court's determination that the court's failure to properly instruct the jury was not harmless beyond a reasonable doubt.

### E.

Finally, the State argues that applying the "some evidence, no matter how weak" holding, *see Kikuta,* 125 Hawai'i at 90, 253 P.3d at 651, would overburden the appellate court with an increase in criminal appeals, and overburden the trial courts with "the nearly automatic retrial" that results from such a holding. Initially, it is not evident how the appellate courts would be more overburdened by a standard requiring them to review the record for some evidence supporting a particular defense rather than reviewing the record for "credible evidence," *see* majority's opinion at 207, 307 P.3d at 1153, or "substantial evidence," *see Stenger,* 122 Hawai'i at 299, 226 P.3d at 469 (Moon, C.J., dissenting), supporting that particular defense. Presumably a defendant would brief the issue on appeal, and the appellate court would need to determine whether there was any evidence apparent from the record in support of the defense.

Also, the State again presumes, without justification, that there would be "nearly automatic retrial," ignoring the fact that all such appeals are subject to harmless error review. Under harmless error review, if the

court did not notice the defense for purposes of instructing the jury at trial, and there is only weak evidence in the record as to that defense, the error may be harmless. The "some evidence, no matter how weak" standard is designed to provide the jury with information that it as a lay body would not readily ascertain, but that would be apparent to a judge. In the interest of justice, if a defense is applicable and its omission is not harmless beyond a reasonable doubt, then <u>indeed</u> the case should be retried to correct the error and to ensure that the jury was properly instructed on all applicable law.

### F.

Accordingly, it is noted that the State's arguments in its Application contravene this court's long-standing precedent with respect to jury instructions, and that the practical difficulties that would allegedly result from adopting the "no matter how weak" standard for unrequested jury instructions are overstated.